2000 ME 154

**ACADIA INSURANCE CO.**

v.

**BUCK CONSTRUCTION CO.**

Supreme Judicial Court of Maine.

Argued May 2, 2000.
Decided Aug. 9, 2000.

7. Polk never moved to amend his complaint to allege a due process violation.

**516**

Harold Friedman, Esq. (orally), Friedman, Babcock & Gaythwaite, Portland, for the plaintiff.

Mark G. Lavoie, Esq., Russell B. Pierce, Esq. (orally), Norman, Hanson & DeTroy, Portland, for the defendant.

Panel CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

¶1 Acadia Insurance Company appeals from the summary judgment entered by the Superior Court (Cumberland County, *Brennan, J.*) in favor of Buck Construction Company. Acadia as a subrogee brought suit against Buck alleging negligent construction, breach of contract and breach of warranty based on the construction of a dam for a fire pond on the premises of Acadia's insured, J. Paul Levesque & Sons, Incorporated. Acadia argues that the trial court erred when it determined that two insurance procurement clauses in the construction contract between Buck and Levesque did not create an ambiguity in the contract, and that the clause requiring Levesque to carry fire insurance operated as a waiver of subrogation in this case for any loss that resulted from fire on the premises. We disagree and affirm the judgment of the Superior Court.

## I. FACTS

¶2 The material facts the parties do not dispute are as follows: In June 1994, Buck and Levesque entered into a contract for Buck to replace a dam impounding water in a fire pond serving the sprinkler system in one of Levesque's mills. The contract was drawn up on a pre-printed form. At the bottom of each page of the four-page contract was a clause that provided, *inter alia*, "[o]wner to carry fire, tornado and other necessary insurance." On the first page, in a section captioned "General Conditions" another clause typed on the form provided that Buck would "[p]rovide all necessary insurance during construction of facility, general liability, workmen's comp., and builders risk."

¶3 The new dam was in place by the end of the summer. On December 19, 1994, one of Levesque's employees noticed that water was leaking out of the dam. Buck was notified and took steps to tempo-

rarily fix the dam. The pond was refilled, but started losing water again. By December 23, the pond had lost almost all of its water. Buck continued its efforts to fix the dam during this time.

¶ 4 In the course of these events, Levesque notified Acadia, who provided fire insurance to the mill, of the situation. Acadia responded by simply requesting to be apprised of the situation as it progressed. Levesque shut the mill down for the Christmas weekend and told Buck that it need not work on the dam over the weekend. Levesque notified area fire departments of the situation and posted a watchman for the weekend. There was also a maintenance crew and a clean-up crew in the mill over the weekend.

¶ 5 On December 26, a fire broke out somewhere in the vicinity of the employee break room and cafeteria. Employees would often smoke in this area. Because the fire damage was so extensive, however, the exact point of origin and cause of the fire have remained undetermined. The loss caused by the fire was covered by the policy issued by Acadia. Acadia paid Levesque for its loss and then brought a claim against Buck as Levesque's subrogee seeking to recover the sum paid to Levesque. The complaint alleged negligence, breach of contract and breach of warranty.

¶ 6 Buck filed a motion for a summary judgment. After a hearing on the matter, the trial court granted the motion, determining that Levesque had waived the right of subrogation on the part of Acadia by virtue of the insurance procurement provision requiring Levesque to carry fire insurance. Acadia filed a motion to alter the judgment, seeking reconsideration of the grant of the motion. After another hearing, the court denied the motion. Acadia now appeals to this Court.

## II. THE INSURANCE PROCURE-MENT CLAUSES AND THEIR EFFECT

¶ 7 We review summary judgments for errors of law, viewing the evidence in the light most favorable to the non-moving party. *See Corey v. Norman, Hanson & DeTroy,* 1999 ME 196, ¶ 7, 742 A.2d 933, 937. A summary judgment is proper when the citations to the record found in the parties' Rule 7(d) statements demonstrate that no genuine issue of material fact has been generated and that a party is entitled to a judgment as a matter of law. *See id.*

¶ 8 As an initial matter, Acadia argues that the trial court erred when it determined that the two insurance procurement provisions in the construction contract were neither in conflict with one another, nor created an ambiguity in the contract. Whether a contract is unambiguous and, if unambiguous, its interpretation are questions of law. *See Willis Realty Assoc. v. Cimino Constr. Co.,* 623 A.2d 1287, 1288 (Me.1993). If the language of the contract is ambiguous, however, its interpretation is a question of fact for the factfinder. *See id.*

¶ 9 Language is considered to be ambiguous if it is reasonably susceptible to different interpretations. *See Guilford Transp. Indus. v. Public Util. Comm'n,* 2000 ME 31, ¶ 14, 746 A.2d 910, 914. Generally, though, canons of construction require that a contract be construed to give force and effect to all of its provisions, *see Levine v. Advest, Inc.,* 244 Conn. 732, 714 A.2d 649, 660 (1998), and we will "avoid an interpretation that renders meaningless any particular provision in the contract," *SC Testing Tech., Inc. v. Department of Envtl. Protection,* 688 A.2d 421, 424 (Me.1996).

¶ 10 As described above, the two provisions that Acadia claims create an ambiguity appear on the first page of the contract giving rise to the parties' dispute in this case. In a typed provision, the contract provides that Buck will procure "all necessary insurance during construction of facility, general liability, workmen's comp., and builders risk." At the bottom of the page, and every other page of the

contract, in a pre-printed section the contract provides "[o]wner to carry fire, tornado and other necessary insurance." These provisions, however, are not inconsistent. Although both contain the phrase "necessary insurance," the phrase is qualified in each instance by a list. The insurance that was to be provided by Buck was insurance that was specific to the work itself and covered such things as third party liability and employee injuries. The insurance that was to be provided by Levesque was broader and covered the whole property, as well as covering different types of risk.

¶ 11 It is not unusual for parties to a building contract to choose to allocate risks associated with the construction and to divide the responsibility for procuring the insurance against those risks. *See, e.g., S.S.D.W. Co. v. Brisk Waterproofing Co.,* 76 N.Y.2d 228, 557 N.Y.S.2d 290, 291, 556 N.E.2d 1097 (1990) (builder to obtain third party liability insurance and owner to obtain property insurance for the work site itself); *Morsches Lumber, Inc. v. Probst,* 180 Ind.App. 202, 388 N.E.2d 284, 285 (1979) (builder to carry "compensation and liability insurance" and owner to carry fire and windstorm insurance). In making a similar determination regarding two separate insurance procurement provisions in a construction contract, a New York court concluded that they were not inconsistent and observed:

> The types of insurance which the contractor was required to provide and maintain by the agreement ... evidence the intent of the parties that the owner would be indemnified and held harmless from liability to third parties.... In contrast, the [pre-printed provisions] required the owner to obtain first party coverage for property loss in the event of damage to the building during construction and to waive its right of subrogation in favor of the [builders].

*Trump-Equitable Fifth Ave. Co. v. H.R.H. Constr. Corp.,* 106 A.D.2d 242, 485 N.Y.S.2d 65, 67 (1985), *aff'd without decision,* 66 N.Y.S.2d 779 (1946).

¶ 12 The court did not err when it determined as a matter of law that the insurance procurement provisions in Buck and Levesque's contract were not inconsistent and did not create an ambiguity. That being said, we must determine whether the specific provision in the contract requiring Levesque to carry fire insurance operates as a waiver of Acadia's subrogation rights against Buck for fire loss, and therefore precludes Acadia from bringing a suit based on an allegation of negligent performance under the contract for damages resulting from the fire.

¶ 13 In general, "an insured may defeat [an] insurance company's rights of subrogation by entering into an agreement of release with the wrongdoer before the policy is issued, or ... after the policy is issued, but prior to loss." *See Emery Waterhouse Co. v. Lea,* 467 A.2d 986, 994 (Me.1983); *see also Willis Realty,* 623 A.2d at 1288–89. Furthermore, such waivers do not contravene public policy. *Emery Waterhouse,* 467 A.2d at 995.

¶ 14 In this case, the policy issued by Acadia specifically acknowledges Levesque's power to waive recovery from other individuals prior to the occurrence of a loss. The risk to the insurer that it may not be able to recover from a wrongdoer is presumably reflected in the insurance premium. *Cf. South Tippecanoe Sch. Bldg. Corp. v. Shambaugh & Son, Inc.,* 182 Ind. App. 350, 395 N.E.2d 320, 332 (1979) (by expressly allowing owner to release contractors from liability in terms of insurance policy, insurance company accepted risk of waiver of subrogation and presumably "calculated its premiums accordingly").

¶ 15 The prevailing authority supports the trial court's legal conclusion that clauses in construction contracts imposing insurance procurement responsibility on owners operate as waivers of subrogation against builders even for damage

occasioned by the builders' negligence, unless the contract provides otherwise. *See, e.g., Tokio Marine and Fire Ins. Co. Ltd. v. Employers Ins. of Wausau*, 786 F.2d 101, 104-05 (2nd Cir.1986); *Housing Inv. Corp. v. Carris*, 389 So.2d 689, 689-90 (Fla. Dist.Ct.App.1980); *Tuxedo Plumbing & Heating Co. v. Lie-Nielsen*, 245 Ga. 27, 262 S.E.2d 794, 795 (1980); *Berger v. Teton Shadows Inc.*, 820 P.2d 176, 178 (Wyo. 1991). Although in some cases there is an additional provision found in the contract reading something like the following: "The Owner and Contractor waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance provided under this Paragraph," *South Tippecanoe*, 395 N.E.2d at 323 & 327 (noting that this waiver clause merely *buttressed* argument that insurance procurement clause standing alone acted as a waiver of subrogation by shifting the risk of loss—in this case by fire—off of the contracting parties and onto an insurer); *see also Tokio Marine*, 786 F.2d at 104, n. 3, the majority of cases rely on the presence of the insurance procurement clause alone to establish that the risk of loss has been contracted away by the parties, *see, e.g., Housing Inv.*, 389 So.2d at 689-90; *Tuxedo*, 262 S.E.2d at 795; *Morsches*, 388 N.E.2d at 286-87; *Weems v. Nanticoke Homes, Inc.*, 37 Md.App. 544, 378 A.2d 190, 193–94 (1977); *Berger*, 820 P.2d at 178.

¶ 16 The reasoning supporting this general conclusion is best stated in a case that dealt with the same principle but in the context of the storage of goods:

> [W]here parties to a business transaction mutually agree that insurance will be provided *as a part of the bargain*, such agreement must be construed as *providing mutual exculpation to the bargaining parties* who must be deemed to have agreed to look solely to the insurance in the event of loss and not to liability on the part of the opposing party.

*General Cigar Co. v. Lancaster Leaf Tobacco Co.*, 323 F.Supp. 931, 941 (D.Md. 1971) (emphasis added) (holding that contract provision requiring that owner of goods provide fire insurance for goods acted as waiver of subrogation such that insurance company could not recover against parties responsible for the storage of the goods), *quoted in Tuxedo*, 262 S.E.2d at 795; *Morsches*, 388 N.E.2d at 286; *Weems*, 378 A.2d at 193-94; *see also South Tippecanoe*, 395 N.E.2d at 327 (noting that by shifting loss onto insurer, contracting parties are demonstrating " 'normal' business foresight"). Put another way, if the parties contracted for the provision of insurance, they must have done so in order to avoid *both* parties having to face potential liability for the *same* risk. It is economically inefficient for both parties to insure against the same risk. Specifically, recognizing that a property owner can always acquire insurance such as fire insurance on its own, courts have reasoned that the explanation for a provision requiring such in a construction contract is an intention on the part of the parties to relieve each other of liability and look to only one insurer to bear the risk of fire instead. *See Housing Inv.*, 389 So.2d at 690; *Tuxedo*, 262 S.E.2d at 795; *Morsches*, 388 N.E.2d at 286. Additionally, waiver of subrogation clauses generally prevent disruption to a project created by disputes regarding liability and allow for a project to continue without delay even following loss or damage of property. *See Tokio Marine*, 786 F.2d at 104.

¶ 17 By agreeing to carry a particular type of insurance, an owner has agreed to look solely to the insurer and releases the builder from responsibility when there is loss or damage flowing from the insured risk; because the insurer can only succeed to those rights possessed by its insured, it has no right to recover from the builder. *See Tuxedo*, 262 S.E.2d at 795. Thus, the trial court properly determined that by agreeing to provide fire insurance, Levesque waived any right to recover from Buck for a loss from fire allegedly caused by Buck.

¶ 18 Acadia argues that this conclusion is at odds with the policy that waivers of subrogation be clear and unequivocal. Acadia confuses, however, indemnification agreements between two parties with waivers of subrogation on the part of a party's insurer. While public policy does not favor agreements by one party to indemnify another party for its own negligence, *see Emery Waterhouse,* 467 A.2d at 993 (stating such agreements are looked on with disfavor and "[i]t is only where the contract on its face by its very terms clearly and unequivocally reflects a mutual intention on the part of the parties to provide indemnity for loss caused by negligence of the party to be indemnified that the liability for such damages will be fastened on the indemnitor"), allocation of risk to insurers through waivers of subrogation are encouraged by the law and serve important social goals: encouraging parties to anticipate risks and to procure insurance covering those risks, thereby avoiding future litigation, and facilitating and preserving economic relations and activity, *cf. id.* at 994–95 (stating with regard to a specific *release* from liability to the extent of insurance coverage in a lease agreement that thereby waived insurer subrogation rights, "[s]uch exculpatory agreements releasing a party to the agreement from liability caused by that party's own negligence do not contravene public policy"). The trial court did not conclude that Levesque must indemnify Buck for its own negligence, rather it determined that Levesque agreed to release Buck from liability and look solely to its insurer for loss caused by fire regardless of the cause, thereby waiving any rights on the part of Acadia to bring suit against Buck as its subrogee. In other words, Levesque was not assuming Buck's liability, rather both parties were allocating the risk of liability for a loss to an insurer.

¶ 19 The trial court did not err as a matter of law in either its determination that the construction contract was not ambiguous or its determination that the provision requiring Levesque to carry fire insurance operated as a waiver of Acadia's subrogation rights. Furthermore, the court's resolution of these questions is consistent, rather than at odds, with public policy regarding the allocation of risk by parties to a contract. Accordingly we affirm the summary judgment.

The entry is:

Judgment affirmed.