STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-01-289
*PAF - YOR - 5/21/2003*

FIRST PARISH CONGREGATIONAL
CHURCH, U.C.C.,

                    Plaintiff

        v.

KNOWLES INDUSTRIAL SERVICES
CORPORATION, et al.,

                    Defendants

DECISION
AND
ORDERS

DONALD L. GARBRECHT
LAW LIBRARY

MAY 28 2003

On August 31, 2000 a catastrophic fire occurred which completely destroyed the church building housing the plaintiff congregation. It appears that the fire was caused by the careless smoking of an employee of the defendant Knowles Industrial Services Corporation which was using a paint stripper from defendant Nutec Industrial Chemical, Inc. to remove old paint from the church. The losses to the plaintiff likely exceed $10,000,000 some of which is covered by a variety of insurance policies. The plaintiff has filed a multi-count complaint against Knowles, Nutec and other defendants. A series of cross-claims are also pending. The parties have filed multiple motions, which have been ably briefed and argued.

## I. KNOWLES' MOTION FOR SUMMARY JUDGMENT

Defendant Knowles has brought a motion for summary judgment seeking to reduce, but not eliminate, its potential exposure. Its essential argument is based on Article 5.4 of the agreement it entered into with First Parish. Article 5.4, which was drafted by a representative of First Parish and placed in the contract at the request of

First Parish, stated, "The Owner and Contractor waive all rights against each other, separate contractors, and all other subcontractors for damages caused by fire or other perils to the extent covered by Builders' Risk or any other property insurance, except such rights as they may have to the proceeds of such insurance." This provision exists in the context of other requirements, in Article 5.2, that Knowles obtain and maintain enumerated types of insurance with a specific aggregate limit of coverage.

Knowles argues that the provision is unambiguous and that Maine law clearly permits and enforces such provisions. In *Emery Waterhouse Co. v. Lea*, 467 A.2d 986, 994, 5 (Me. 1983) the Law Court discussed such issues. At page 994 it stated, "Whether or not an insurance policy expressly reserves subrogation rights, it is the universal rule that upon payment of a loss the insurer is entitled to pursue those rights against a third party whose negligence or wrongful act caused the loss. But an insured may defeat the insurance company's rights of subrogation by entering into an agreement of release with the wrongdoer before the policy is issued, or, as in the instant case, after the policy is issued, but prior to loss." At page 995 the Law Court stated that such exculpatory agreements did not contravene public policy. A similar result was reached in a brief opinion in *Willis Realty Associates v. Cimino Construction Company*, 623 A.2d 1287, 1288-9 (Me. 1993) and in a more detailed analysis in *Acadia Insurance Co. v. Buck Construction Co.*, 2000 ME 154, ¶¶ 11-19, 756 A.2d 515, 518-20. These cases deal with the more relevant issue of a waiver of subrogation rights rather than a release.

In its motion Knowles has argued that, like the *Buck* case, First Parish has agreed in part to release Knowles from liability and to look initially to its own insurers. See *Buck* at ¶18. If Knowles is correct then that portion of the loss of First Parish, which was covered by its own insurance, cannot be recovered from Knowles through a

2

subrogation action. Only that portion of the loss that was not covered can potentially be recovered from Knowles.

Counsel for First Parish have vigorously attempted to find a way to avoid the results that flow from *Lea, Willis Realty* and *Buck*. Its first argument is that Knowles made fraudulent or material misrepresentations in inducing First Parish to enter into a contract with it. The argument is that Knowles claimed that it was competent and would comply with all standards and codes.

Much as First Parish in the subrogation component of its amended complaint would like to characterize this as history preservation work requiring specialized knowledge it appears that Knowles was hired, in relevant part, to remove paint, nothing more. The facts do not support the claim that Knowles pretended to be a specialist in historic preservation work. Knowles may well be negligent in carrying out the contract but does not appear to have acted fraudulently or to have made material misrepresentations in getting the contract. An employee of Knowles smoked where he should not have and a volatile paint stripper caused a fire, which tragically destroyed a beautiful historic church causing both a large economic loss and, most probably, a psychological and spiritual loss to many parishioners. However, those unfortunate results do not suggest that Article 5.4 should be ignored.

First Parish has suggested that the normal public policy, which allows subrogation rights to be given up, should not be enforced in this context. While the church was an historic landmark and while it is the national and state policy to preserve and protect such landmarks, there is no reason, absent legislation or a decision by the Law Court, to create an exception for historic buildings. Article 5.4 did not endanger the church or lead to its destruction. Exceptions could be created for equally valuable industrial, commercial or residential buildings or to preclude waivers for other types of

losses all of which involve important, perhaps even more compelling aspects of life. If an exception is to be made it is not to come from a single Superior Court Justice.

An additional argument by First Parish was that waivers of subrogation rights are void for claims of willful and wanton misconduct. Even if such an enhanced degree of culpability factually existed Maine does not recognize the concept of "willful and wanton misconduct" in civil cases. There is negligence with compensatory damages and malice or its equivalent with punitive damages. The intermediate stage of "willful and wanton misconduct" is not recognized.

Article 7.1 allows First Parish, the Owner, the following remedy: ". . . if contractor (Knowles) breaches any of the warranties set forth above, in addition to any remedies set forth above, the Owner shall have available to it, all remedies available at law." First Parish through Article 5.4 limited the remedies of its insurance carriers. Article 7.1 allows it to pursue claims for breach of warranty but only to the extent that those claims exceed its insurance coverage.

Knowles is correct that Article 5.4 provides it with protection for damages caused by fire but only to the extent that those damages were covered by Builders' Risk or any other property insurance. Two entities with equal power and sophistication freely entered into a contract with this provision. There is no compelling reason not to enforce it.

## II. MOTIONS FOR PARTIAL SUMMARY JUDGMENT OF NUTEC, CLARENCE SMITH AND CAMGER CHEMICAL

Nutec Industrial Chemical, Inc., Clarence E. Smith, Inc. and Camger Chemical Systems, Inc. have all filed motions for partial summary judgment claiming that the waiver of subrogation provision found at Article 5.4 of the First Parish contract with Knowles benefits them. Nutec, Clarence Smith and Camger were involved in the

4

manufacturing or distribution of the paint stripper that apparently ignited causing the fire that destroyed the church.

Article 5.4 states that First Parish waives all rights it has against Knowles, " . . . separate contractors, and all other subcontractors . . .". The issue is whether Nutec, Clarence Smith and Camger can be fairly characterized as contractors or subcontractors when they exclusively or primarily provide a product rather than the types of services typically provided by a contractor or subcontractor from another of the building trades. In common usage a general contractor might build a house while a subcontractor might do plumbing, electrical or painting work.

These three motions for partial summary judgment will be granted for three reasons. First, both labor and materials are necessary for a contractor or subcontractor to perform the required work. See *Crow Willliams, I, v. Federal Pacific Electric Company,* 683 S.W. 2d 523, 524 (Tex. Ct. App. 1984) and *Atlantic Sea-Con, Ltd. V. Robert Dann Co.,* 582 A.2d 981, 987 (Md. 1990). Second, waiver of subrogation clauses are to be liberally construed. *Willis Realty* at 1288. Third, since Knowles is to receive the benefit of the waiver of subrogation provision that benefit would be illusory if Nutec, Smith and Camger did not receive the same benefit and could recover from Knowles on cross-claims for amounts that Knowles could not be required to pay directly. It is true that the words "material suppliers" or "suppliers" appear in Articles 2.4 and 2.2 of the First Parish contract with Knowles. That does not mean that "subcontractors" in Article 5.4 should be read to exclude suppliers or material suppliers. Article 5.4 has a broader purpose, which must be liberally construed.

## III. MOTION TO JOIN PARTIES

Given the rulings on the motions by Knowles, Nutec, Clarence Smith and Camger the motion of Camger Chemical Systems, Inc. to join necessary parties is

denied. That motion had requested that the insurance companies that had already paid a portion of the loss of First Parish be joined as parties. See Rules 17(a) and 19(a), M.R.Civ.P.

## IV. DISCOVERY ISSUES

A. Nutec's and Smith's Motions to Compel – Nutec has filed a motion to compel seeking discovery from Dennis Belanger and Jim Eddy. Mr. Belanger had been hired by an insurer of the church and was the only fire investigator on site on the day of the fire and on the day after. Mr. Eddy was hired by another insurer and issued a report 13 days after the fire. Nutec claims not to have been aware of the fire until several weeks afterwards and could not get its own expert there soon enough.

The issue is whether it should have access to any reports from either Mr. Belanger or Mr. Eddy or otherwise be able to conduct discovery of what is clearly work product. Discovery of "facts known or opinions held" by these two gentlemen would be permitted only ". . . upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." Rule 26(b)(4)(B), M.R.Civ.P.

Nutec has demonstrated that the reports generated by public officials, the nature of the fire, and the state of the evidence several weeks after the fire show that exceptional circumstances exist where it is impracticable for it to get sufficiently detailed information about the fire either from public sources or through its own investigation. Nutec's motion will be granted. An issue has also arisen as to whether a report by a third expert James Bradbury should be disclosed. Since information from Mr. Belanger and Mr. Eddy will be available it is not necessary for Nutec to have access at this time to Mr. Bradbury. Smith has a similar motion which is also granted.

B.    Discovery Deadline – By June 16, 2003 the parties shall either submit a joint proposed order setting an amended discovery schedule or, if they cannot agree, their separate proposals with a brief statement of the reasoning behind their suggested deadlines.

The entries are:

1.    The motion of Knowles Industrial Service Corporation for summary judgment shall be treated as a motion for partial summary judgment and is granted.  Partial Summary Judgment shall be entered for the defendant Knowles on Counts I, II, III and IV of the amended complaint to the extent that the plaintiff's damages were covered by Builders' Risk or any other property insurance.

2.    The motion of Camger Chemical Systems, Inc. to join necessary parties is denied.

3.    Defendant Nutec Industrial Chemical, Inc.'s motion to compel is granted in part.

4.    The motion of Clarence E. Smith, Inc. for partial summary judgment is granted.  Partial summary judgment shall be entered for the defendant Smith on Counts XII, XIII and XIV of the amended complaint to the extent that the plaintiff's damages are covered by Builders' Risk or any other property insurance.

5.    Clarence E. Smith, Inc.'s motion to compel is granted in part.

6.    The motion of Camger Chemical Systems, Inc. for partial summary judgment is granted.  Partial summary judgment shall be entered for the defendant Camger on Counts IX, X and XI of the amended complaint to the extent that the plaintiff's damages are covered by Builders' Risk or any other property insurance.

7.    The motion of Nutec Industrial Chemical, Inc. for partial summary judgment is granted.  Partial summary judgment shall be entered for the defendant Nutec on Counts V, VI, VII and VIII of the amended complaint to the extent that the plaintiff's damages are covered by Builders' Risk or any other property insurance.

CV-01-289

Dated:     May 21, 2003

_Paul A. Fritzsche_
Paul A. Fritzsche
Justice, Superior Court

Neal F. Pratt, Esq. - PL
Jotham D. Pierce, Jr., Esq. - PL
A. Richard Bailey, Esq. (pro hac vice) - PL
Sean P. Carter, Esq.  - (pro hac vice) - PL
Gerard O. Fournier, Esq. - DEF. KNOWLES INDUSTRIAL Services Corp.
Jeffrey A. Thaler, Esq. -  DEF. KNOWLES INDUSTRIAL SERVICES CORP.
David P. Very, Esq. - DEF. NUTEC INDUSTRIAL CHEMICAL, INC.
David P. Silk, Esq. - DEF. CAMGER CHEMICAL SYSTEMS, INC.
Philip Coffin, III, Esq. - DEF. CLARENCE E. SMITH, INC.