STATE OF MAINE
HANCOCK, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-03-20

Town of Blue Hill,
     Plaintiff

v.

Order (Motions for Summary Judgment)
(Title to Real Estate is Involved)

Bison Free Range, Inc.,
     Defendant

DONALD L. GARBRECHT
LAW LIBRARY

OCT 25 2004

Pending before the court are the parties' cross-motions for summary judgment. The court has reviewed the parties' arguments and other submissions associated with their motions.

This action tests the Town's claim that it owns realty located on Long Island, which is located in Blue Hill Bay and which is part of the Town of Blue Hill itself. The Town contends that it acquired title to the property from Bison through a municipal tax foreclosure process. Bison argues that the foreclosure process was fatally defective because the property was not adequately described in the instruments used by the Town to pursue the remedy of foreclosure. The parties have also raised issues regarding Bison's underlying municipal tax liability.

Granting a motion for summary judgment "is proper when the citations to the record found in the parties Rule 7(d) [now Rule 56(h)] statements demonstrate that no genuine issue of material fact has been generated and that a party is entitled to a judgment as a matter of law." *Acadia Ins. Co. v. Buck Constr. Co.*, 2000 ME 154, ¶ 7, 756 A.2d 515, 517; *see generally* M.R.Civ.P. 56.

The record on summary judgment establishes the following facts.[1] Bison acquired the property at issue in February 1997. Defendant's Statement of Material Fact

---

[1] Because there are two separate pending motions for summary judgment, the parties have filed two sets of rule 56(h) statements. Those sets contain substantially similar information. The court has reviewed all of those statements of material fact but focuses

1

(DSMF) ¶ 1. This parcel is generally constituted of three separate parcels that, through several transactions, had been united into the single parcel that Bison now owns. *Id.* at ¶¶ 5 and 9. In March 1990 and June 1990, the Town created two maps (one in each month) that depicted the three parcels that have some correspondence to what is now Bison's parcel. *Id.* at ¶¶ 6 and 7. Through at least April 1996, *id.* at ¶ 4, these three parcels were identified as lots 2, 4 and 5. *Id.* at 6. They were located respectively in the northwest, southeast and northeast quadrants of Long Island. *Id.* In 1991, a 40 acre portion of lot 2 was conveyed to a third party, *id.* at ¶ 14, and the deed to that outconveyance was recorded at book 2097 page 203 of the Hancock County Registry of Deeds.[2] *Id.* at ¶¶ 19 and 20. Bison's single lot is now described as "lot 2" on the "April 1, 1996 version" of the Town's tax map. *Id.* at ¶ 5.

Bison did not pay the 1999 municipal taxes due on the parcel at issue. Plaintiff's Statement of Additional Material Fact (PSAMF) ¶ 8.[3] On May 12, 2000, the Town's tax collector sent a 30 day notice to Bison's president, David Florian. *Id. See* 36 M.R.S.A. § 942. (Florian was the grantor of one of the parcels that now constitutes a portion of Bison's land on Long Island. DSMF ¶ 3.) The 30 day notice described or otherwise referred to the property in three ways. First, it identified the property as the parcel described in the deed recorded at book 2097 page 203 of the Hancock County Registry of

---

its references on both parties' statements associated with Bison's motion, in order to eliminate duplication.

[2] In its rule 56(h) statement, Bison implies – and the Town admits -- that there were more than the one outconveyance noted in the text. *See* DSMF ¶¶ 11 and 13. The statement of material fact, however, provides specific information only about that one. The number of outconveyances, however, is not material to the motions at bar.

[3] As is noted above, because the parties have filed cross-motions for summary judgment, they have filed separate rule 56(h) statements. As part of its opposition to Bison's motion for summary judgment, the Town filed a response to Bison's statement of material fact and additional statements of material fact. Although the Town entitles these additional statements simply as its "Statement of Material Fact," in this order the court describes these additional statements as the Town's "statement of additional material facts" (PSAMF) to distinguish these statements from the ones supporting its own motion for summary judgment. *See* M.R.Civ.P. 56(h)(2) (referring to statement of additional facts that a motion opponent may file).

Deeds. DSMF ¶¶ 19 and 20. This reference is incorrect, because that is the deed that conveyed to a third party the 40 acre parcel that had been part of the original lot 2.[4] Second, the 30 day notice described the subject parcel as one that was 3,265 acres in size. *Id.* at ¶ 21. And third, the 30 day notice described the parcel as "[map]040-[lot]002. . .on Tax Maps of the Town of Blue Hill, Prepared by Robert Duplissea Pittsfield Maine and Dated March 1990, on File at Town of Blue Hill Municipal Offices." PSAMF ¶ 8; *see also* DSMF ¶ 23. As is noted above, however, on the original March 1990 map, lot 2 was different that the presently existing lot 2 on which the Town now seeks to foreclose, because the original lot 2 became part of the larger parcel that Bison now owns and that is the subject of this action. After the 1990 map was created, real estate transactions were noted through handwritten notations on that map. PSAMF ¶ 4. Thus, the Town did not create new maps, but rather the original map cumulatively reflected changes affecting the parcels shown on the map. *Id.* At least some of these changes were made in pencil. DSMF ¶ 5. When any such change was drawn onto the Town's tax map, the date of the revision was also written on the map. PSAMF ¶ 4. The Town, however, does not have a copy of the map as it existed in March 1990. DSMF ¶ 29.

The property tax remained unpaid after the 30 day deadline created by section 942. PSAMF ¶ 10. The Town's tax assessor then recorded a tax lien certificate in the Hancock County Registry of Deeds, also pursuant to section 942. The certificate described the subject parcel in three ways. The first two (a deed reference and a description of acreage) are the same as those set out in the 30 day notice. DSMF ¶¶ 20 and 21; PSAMF ¶ 10. As the third form of property description, the tax lien certificate also made reference to a municipal tax map. The referent was a map dated April 1989 and prepared by RJD Appraisal. DSMF ¶22; PSAMF ¶¶ 4 and 10. RJD Appraisal, however, did not produce its maps until March 1990, PSAMF ¶ 4, and the Town does not have a map dated April 1999. POSMF ¶ 7; DRSMF ¶ 4.

In a way that was statutorily timely, *see* 36 M.R.S.A. § 943, the Town's treasurer sent Bison a notice of impending automatic foreclosure. PSAMF ¶ 11. That notice

---

[4] During the pendency of this action, the Town changed the deed reference on the "Bison account," which now accurately refers to the deed that in fact conveyed the property to Bison. DSMF ¶ 24.

referred to the tax lien certificate and the book and page where the certificate was recorded, and it also described the property as "the real estate described therein." *Id.* Bison did not pay the tax within 18 months of the date the tax lien certificate was filed with the registry, which, by operation of statute, would be the period of redemption. *Id.*

In late April 2002, the Town's tax collector sent a letter to Bison, reminding it of the outstanding tax liability and specifying the total obligation due (including the tax itself ($7,820.10, PSAMF ¶ 7) and interest as of the date of the notice). DSMF ¶¶ 26 and 27. Nine days after the date of the letter, Bison tendered payment of $24,387.47. *Id.* at 25. The Town declined to accept this payment. *Id.* at ¶ 28. The record does not establish whether the amount of this tender was the amount due as of the date of the letter or the amount due of the date of the tender, which would consist of the amount due as of the date of the letter together with interest that accrued between the date of the letter and the date of tender.

In this action, the Town seeks a declaratory judgment establishing that it has successfully foreclosed on Bison's property, divesting Bison of its interest in the parcel. Bison has filed a converse claim, seeking a declaration that the Town did not acquire the property because it did not comply with the statutory predicate of an accurate descriptions of the parcel in the notice and certificate. In amended pleadings, the Town also has asserted a claim against Bison for the unpaid taxes themselves, and Bison has pleaded an alternative theory of estoppel to invalidate the foreclosure process.

## A. Foreclosure

In order to perfect a foreclosure based on unpaid municipal real estate taxes, the 30 day notice sent to the record owner must include a statement "describing the real estate on which the tax is assessed, . .," and the tax lien certificate must also include "a description of the real estate on which the tax is assessed. . . ." 36 M.R.S.A. § 942. *See, e.g., Estabrook v. Town of Bowdoin*, 568 A.2d 1098, 1098 (Me. 1990). In judicial proceedings, the tax lien mortgage is prima facie evidence that, among other things, the process by which a municipality claims to have acquired title by foreclosure was regular and valid. 36 M.R.S.A. § 943. The property owner bears the burden of establishing any defect in that process. 36 M.R.S.A. § 947. Despite this presumption of regularity and validity, a municipality is required to adhere strictly to the statutory requirements that

4

would result in a loss of the taxpayer's property. *See Town of Pownal v. Anderson*, 1999 ME 70, ¶ 14, 728 A.2d 1254, 1257.

Here, the issue is whether the Town's various descriptions of Bison's property in the documents leading to the putative foreclosure satisfied the requirements imposed by statute and interpretive caselaw. A "functional test" is used to determine whether a description is adequate. *Town of Pownal*, 1999 ME 70, ¶ 8, 728 A.2d at 1256. Under this test, "the lands must be so described that they can be identified with reasonable certainty and the descriptions must be certain or refer to something which can be made certain." *Id.*, 728 A.2d at 1265 (citation, internal punctuation and emphasis omitted). If the description is by reference, that level of certainty must be attainable without resort to parol evidence that otherwise might be used "to show what plan was intended by the reference." *Hamm v. Town of Medway*, 644 A.2d 1388, 1389 (Me. 1994); *cf. Arsenault v. Inhabitants of the Town of Roxbury*, 275 A.2d 598, 600 (Me. 1971) (". . .[T]he assessment must be as complete in and of itself as a deed and parol evidence cannot be resorted to for the purpose of supplying deficiencies in the description.").

Here, within their four corners, the relevant instruments and documents do not attempt to provide a description of the property. To be legally adequate, a free-standing description must consist of metes and bounds, or landmarks, or other descriptive elements rising to that level. *Hamm*, 644 A.2d at 1389. Here, the only independent information describing the property is the acreage. Regardless of whether that information is accurate, this does nothing to describe the property. Thus, the next area of inquiry must focus on the references included in the descriptions.

There are two types of references. The first is to a deed. In both the 30 day notice and the lien certificate, the referent deed is the one recorded at book 2097 page 203 of the Hancock County Registry of Deeds. The record establishes, however, that this deed reference is incorrect because it describes property that formerly was owned by one of Bison's grantors and is now owned by a third person. As part of the proceedings at bar, Bison argues that the corrected reference in the assessment should be accepted, thereby alleviating the original error. *See* note 4 *supra.* Corrections of "circumstantial errors or defects" committed by a tax collector are permitted. 36 M.R.S.A. § 902. The present circumstances do not justify leave to allow a correction, because the erroneous

5

reference relates to an "essential" matter, rather than one that is circumstantial. *McCarty v. Greenlawn Cemetery Association*, 158 Me. 388, 394 (1962) (drawing distinction between "circumstantial" and "essential" errors and defects under statutory predecessor to section 902). A municipality bears the burden of including a proper and adequate description of property on which it seeks to foreclosure for unpaid taxes, and the Town is held to a standard of strict compliance with that and the other requirements at law. The patently incorrect deed reference clearly would leave the taxpayer wondering whether the object of the municipality's action is its property or someone else's. *See Estabrook*, 568 A.2d at 1098 ("The description must be sufficient to alert the property owner that his or her title to the property is in jeopardy."). The Town's erroneous deed reference affects the core of its attempts to obtain relief through foreclosure, and it cannot be remedied now.

Finally, the third piece of descriptive information in the 30 day notice and the certificate consists of the references to the Town's tax maps. This element of the descriptions must be viewed in light of the erroneous deed reference discussed in the previous paragraph. Even if the references to the Town's tax maps were not problematic, the notice and certificate would nonetheless be ambiguous, because (again, if the map references were correct) the map references would describe land that is owned by Bison, and the deed reference would describe land that is not owned by Bison (the 40 acre outconveyance). This internal ambiguity – which may not be resolved through parol evidence – itself undermines the adequacy of the overall property description.

Beyond this, however, the map references are materially flawed. Section 942 requires the tax lien certificate to provide a description of the property at issue. Here, the parties argue extensively the adequacy of the references to the March 1990 map contained in the 30 day notice. However, the tax lien certificate described the parcel by referring to a map created by RJD Appraisal in April 1999. The record establishes that RJD Appraisal did not create any maps until sometime in 2000. The only conclusion is that there does not exist a map that RJD Appraisal created in April 1999. And further no such map is in the Town's possession. Reference to a non-existent plan is not an adequate description. *See Johnson v. Town of Dedham*, 490 A.2d 1187, 1190 (Me. 1985); *see also Ouellette v. Daigle*, 219 A.2d 545, 547 (Me. 1966) ("Such an uncertain

reference [to a plan] does not make any plan a part of the deed or measure the extent of the lands conveyed." (Citation omitted.)). Irrespective of whether the map reference in the 30 day notice is sufficient, the map reference in the tax lien certificate – which, under section 942, is the subject of an independent description requirement – voids the Town's attempt to foreclose.

And even beyond this fatal flaw in the foreclosure process that the Town has pursued, the court also concludes that the 30 day notice's reference to the March 1990 map is sufficiently ambiguous to preclude any finding that it creates an adequate reference to the parcel at issue here. The 30 day notice referred to a map "Prepared by Robert Duplissea Pittsfield Maine and Dated March 1990, on File at Town of Blue Hill Municipal Offices." A municipality's "reference to the assessor's tax maps by name. . .[is] a legally sufficient description to withstand a facial attack" for failure to comply with the tax foreclosure statutes. *Hamm*, 644 A.2d at 1390. Here, in the 30 day notice, the Town made reference only to the March 1990 map. Since March 1990, Town officials have updated that map by making handwritten notations reflecting changes in the status of the parcels depicted in the original document. Significantly, revision dates are noted on the map when those changes are made. Here, the "lot 2" on which the Town seeks to foreclose is a very different parcel than the "lot 2" that is shown in the original March 1990 map: some – but not all – of the original lot 2 is included in the present lot 2, but the present lot 2 contains land that was not part of the original lot 2. The map reference at issue here does not clearly indicate whether one should look to the original map, or to the changes that the map has undergone since it was created. One would need to resort to parol evidence (namely, the Town's procedures for updating the map) to identify the referent. This ambiguity is shown clearly in *Town of Pownal*, where the Law Court accepted as sufficient an assessment plan "DATED APRIL 1, 1974, *REVISED TO APRIL 1, 1992. . . .*" 1999 ME 70, ¶ 9, 728 A.2d at 1256 (emphasis added). Because here the Town maintained revision dates, it could have made clear the version of the map that was the subject of the reference. By declining such an opportunity, it created fair uncertainty whether the referent map was the original or the revised version.

7

Finally, even if the record can be construed to demonstrate that Bison does not own any other property in Blue Hill other than the parcel at issue,[5] *see Estabrook,* 568 A.2d at 1099, this is insufficient to defeat Bison's argument that as a matter of law the Town has failed to comply with its obligation to provide an adequate description of the parcel on which it seeks to foreclose.

For these reasons, the court concludes as a matter of law that the record establishes the Town's failure to comply with the statutory requirements necessary to achieve foreclosure of property due to unpaid taxes. The court need not and therefore does not address Bison's alternative argument that even if the Town had satisfied the statutory requirements for foreclosure, the Town is estopped from obtaining that result.

## B. Liability for unpaid taxes

The Town seeks judgment for the property taxes and interest that Bison still owes. The parties' submissions reveal their conceptual agreement that Bison is liable for the amount that was due as of the date it tendered full payment to the Town but that Bison is not liable for any amount that accrued after a date when it tendered payment in full. The record is insufficient to establish that Bison in fact tendered full payment of the obligation that was due as of the date of that tender.[6] Thus, although the parties do not dispute the legal issues underlying the Town's claim for payment, the record does not allow entry of judgment on this issue. Unless the parties agree to the amount of Bison's liability for unpaid taxes and interest, a hearing will be held on that limited issue.

The entry shall be:

---

[5] The Town asserts that Bison acquired the Long Island property in March 1997 and that "Bison did not acquire any other land in Blue Hill or in Maine." PSAMF ¶ 3. It is not clear from this assertion whether Bison did not acquire any other such land at any other time, or whether it simply did not acquire any other such land at the time of the March 1997 conveyance.

[6] As of April 24, 2002, (the date of the Town's "reminder notice" to Bison), Bison owed back taxes and interest in an amount specified in that letter. Bison tendered payment of $24,387.47 on May 3, 2002. The record does not establish whether that amount of the tender was the amount that had been due on April 24 or whether it was the amount due as of the date of the tender itself. If the former, then that tender may have fallen short of payment in full because of the accrual of additional interest between April 24 and May 3.

For the foregoing reasons, the plaintiff's motion for summary judgment is denied.

The defendant's motion for summary judgment is granted. On count 1 of the amended complaint, summary judgment is entered against the plaintiff and for the defendant. (Hearing shall be held on count 2 of the amended complaint.)

On count 1 of the defendant's amended counterclaim, judgment is entered for the defendant (the counterclaim plaintiff). The tax lien certificate filed by the Town of Blue Hill and recorded at book 2927 page 156 of the Hancock County Registry of Deeds is invalid and of no effect. Further, the Town of Blue Hill has not perfected the process that otherwise would result in municipal tax foreclosure on the real property that is the subject of said lien (which property is described in a deed recorded at book 2641 page 439 of the Hancock County Registry of Deeds). Count 2 of the amended counterclaim is dismissed as moot.

Dated: September 30, 2004

_____
Justice, Maine Superior Court

FILED &
ENTERED

OCT 0 4 2004

SUPERIOR COURT
HANCOCK COUNTY