STATE OF MAINE                                      SUPERIOR COURT
CUMBERLAND, ss.                                     CIVIL ACTION
                                                    DOCKET No. CV-19-43

CHARLES HODGKINS, II,              )
                                   )
            Plaintiff,             )
                                   )
      v.                           )   ORDER ON GGP - MAINE MALL LLC's
                                   )   MOTION FOR PARTIAL SUMMARY
GGP-MAINE MALL, LLC,               )   JUDGMENT ON THIRD-PARTY CLAIM
                                   )
            Defendant, Third-Party )
            Plaintiff,             )
                                   )
R.J. GRONDIN & SONS                )
                                   )
            Third-Party Defendant. )

Pending before the Court is Defendant Third-Party Plaintiff GGP-Maine Mall, LLC's (the "Maine Mall's") Motion for Partial Summary Judgement against Third-Party Defendant R.J. Grondin & Sons (" R.J. Grondin"). For the following reasons, the Motion is denied.

## I.   Summary Judgment Factual Record

On February 11, 2019, Plaintiff Charles Hodgkins, II, ("Mr. Hodgkins") commenced the underlying action against the Maine Mall seeking damages for injuries sustained after falling on an icy sidewalk. On May 16, 2019, the Maine Mall filed its Third-Party Complaint against R.J. Grondin seeking indemnification for fees and any damages it may incur as a result of Mr. Hodgkins's Claim. The Maine Mall now seeks a partial summary judgment on its third-party claim while Mr. Hodkins's underlying suit is pending, and before the facts have been proved. The following facts establish the record relevant to this Court's order on the Motion.

Entered on the Docket: 2/10/2020

REC'D CUMB CLERKS OFC
FEB 10 '20 PM1:05

For Plaintiff: Richard Regan, Esq.

For Defendant: James Haddow, Esq.
For 3rd Party Defendant: Jonathan Brogan, Esq.

Around 11:20 a.m. on January 24, 2018, Mr. Hodgkins fell near the Macy's West Maine Mall entrance. (Supp.'g S.M.F. ¶ 1.) In order to reach the place where he fell, Mr. Hodgkins exited the mall through Macy's West Maine Mall entrance toward the parking lot, which appeared to have been cleared, and continued onto the walkway toward the former Ruby Tuesday restaurant. (Supp.'g S.M.F. ¶¶ 4-5.) Mr. Hodgkins claims he moved towards the former Ruby Tuesday building, which appeared not to have been cleared, partly because the area that appeared to have been cleared in front of Macy's West entrance "wasn't cleared," alleging that "[t]here were a lot of frozen footprints . . . and it was a very uneven surface and it made me uncomfortable" and that the area in front of the former Ruby Tuesday building "seemed smoother under foot." (Supp.'g S.M.F. ¶ 5.) As Mr. Hodgkins rounded the corner of the former Ruby Tuesday building, he moved slightly to his left and then fell. (Supp.'g S.M.F. ¶ 2, 4.) Mr. Hodgkins was roughly a foot, or less, from the building.[1] (Add. S.M.F. ¶ 7.)

Since the 1970's, R.J. Grondin has provided snow and ice removal services to the Maine Mall. (Add. S.M.F. ¶ 1.) On October 21, 2016, R.J. Grondin entered into a contract to provide snow and ice removal services, and sanding and salting services on Maine Mall premises until October 31, 2019 (hereinafter the "Contract"). (Supp.'g S.M.F. ¶ 6.) The Contract was in effect at the time of Mr. Hodgkins's fall. (Supp.'g S.M.F. ¶ 7.) The Contract provides that R.J. Grondin is "fully responsible to monitor current weather conditions and forecasts, and to take all steps necessary in accordance with high quality standards and best practices to ensure that the Property is free of ice and snow in all

---

[1] The Maine Mall did not reply to R.J. Grondin's Statement of Additional Facts. Consequently, R.J. Grondin's Statement of Additional Facts have been admitted. *See* M.R. Civ. P. 56(h)(4) ("Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted.").

Subject Areas." (Supp.'g S.M.F. ¶ 8.) "Subject Areas" includes all "exterior areas that are accessible by equipment on the Property where persons may walk, drive or park." (Supp.'g S.M.F. ¶ 9.) The Contract lists various types of "equipment" including "Salt Truck," "Magic Salt," "Untreated Salt," "L4084 Volvo L180E," "L5458 L180C," "Ten-Wheeler dump truck," and "Tri-Axle dump truck." (Add. S.M.F. ¶ 4.) The Contract further provides that "no modification of any term or condition of [the Contract] shall be valid or of any force or effect unless made in writing, signed by the parties . . . and specifying with particularity the nature and extent of such modification or amendment." (Supp.'g S.M.F. ¶ 14.) There have not been any written amendments to the Contract. (Supp.'g S.M.F. ¶ 15.)

The Maine Mall seeks to enforce the following indemnification provision (the "Indemnification Provision") regarding R.J. Grondin's duty to indemnify the Maine Mall in the event of claims that are related to the services provided by R.J. Grondin:

A. Service Provider shall, to the fullest extent permitted by law, indemnify, hold harmless, defend and reimburse Owner, the property management company for the Property (if any), and all of their direct and indirect parents and subsidiaries, any of their affiliated entities, successors and assigns and any current or future director, officer, employee, partner, member, lender or tenant of any of them ("Indemnified Parties") from and against any and all claims, damages, losses, liabilities, suits, expenses, citations and fines (including attorney's fees and legal expenses) (collectively, "Claims") which arise out of or are in any way connected with (i) the Services performed under this Agreement, (ii) any negligence or intentional misconduct or other action or omission of Service Provider or its employees, agents, affiliates or suppliers, directly or indirectly involved in the Services ("Service Provider-Parties"), or (iii) any violation of this Agreement by Service Provider Parties.

B. Without limiting the generality of the foregoing provisions, Service Providers obligations to indemnify, hold harmless, defend and reimburse under this Section 6 include any and all Claims arising or alleged to arise wholly or partly out of or in any way connected with the Services, regardless of whether or not such Claims are caused or alleged to have been caused in whole or in party by any negligent act or omission of any Indemnified Party; provided, however, to the extent prohibited by applicable law, Service Provider's indemnification and hold harmless obligations herein shall not apply to any such Claim to the extent determined to be actually caused by the negligence of the party seeking to be indemnified.

(Supp.'g S.M.F. ¶ 16; *see* Def. Third-Party Pl.'s (hereinafter "Pl.'s") Ex. B, at 2-3.)

Historically, and prior to Mr. Hodgkins fall, R.J. Grondin maintained the walkway area outside of the Macy's West Mall entrance – where Mr. Hodgkins initially exited – as this was an exterior area "accessible by equipment" where persons may walk. (Supp.'g S.M.F. ¶¶ 10, 12.) Conversely, the Maine Mall and R.J. Grondin did not consider the area within two feet of the former Ruby Tuesday building, where Mr. Hodgkins fell, to be an area "accessible by equipment" due to concerns that the equipment could shift on ice and damage the building. (Add. S.M.F. ¶ 8.) Historically, the Maine Mall did not request sanding or salting services within two feet of the former Ruby Tuesday's building. (Add. S.M.F. ¶ 10.) Ruby Tuesday vacated the building in August 2016, and at the time of the accident the building remained vacant. (Add. S.M.F. ¶¶ 5-6.) Rather, historically, it was either Maine Mall personnel or Ruby Tuesday employees who would clear snow and treat that area. (Add. S.M.F. ¶ 10.)

During the winters of 2016 through 2018, including the first year that Ruby Tuesday vacated the building, the Maine Mall did not request sanding or salting services within two feet of the building, and R.J. Grondin therefore did not provide such services. (Supp.'g S.M.F. ¶ 13; Opp. S.M.F. ¶ 13; Add. S.M.F. ¶¶ 10-12.) Accordingly, R.J. Grondin did not provide sanding or salting services in that area on the date of Mr. Hodgkins's fall. (Add. S.M.F. ¶ 12.) A separate contractual provision provides that R.J. Grondin is "release[d] from any Liability resulting from [the Maine Mall's] failure to request sand and/or salting services in connection with the Agreement." (Add. S.M.F. ¶ 2.)

## II.    Standard of Review

A party is entitled to summary judgment when review of the parties' statements of material facts and the record to which the statements refer, demonstrates that there is

no genuine issue as to any material fact in dispute, and that the moving party is entitled to judgment as a matter of law. *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821; M.R. Civ. P. 56(c). A contested fact is "material" if it could potentially affect the outcome of the case. *Id.* A "genuine issue" of material fact exists if the claimed fact would require a factfinder to "choose between competing versions of the truth." *Id.* (quoting *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504).

When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.* The evidence offered in support of a genuine issue of material fact "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating." *Estate of Smith v. Cumberland Cty.*, 2013 ME 13, ¶ 19, 60 A.3d 759.

## III. Discussion

The Maine Mall argues that regardless of whether or not R.J. Grondin had a contractual duty to maintain the area where Mr. Hodgkins fell, the claim still "arise[s] out of" or is at the very least "connected with" the services provided by R.J. Grondin. (Pl.'s Reply 3-4.) This argument is premised on the fact that Mr. Hodgkins was redirected towards the Ruby Tuesday building, at least in part, because of R.J. Grondin's failure to properly salt or sand the walkway in front of the Macy's West Maine Mall entrance – an area both parties agree was a "Subject Area."[2] (Pl.'s Reply to Def.'s Opp. to Pl.'s Mot. Summ. 4; Supp.'g S.M.F. ¶¶ 10, 12.)

---

[2] The Court notes, however, that Mr. Hodgkins went on to say that "my movement in this direction may well have been somewhat motivated by the fact that I believe my car was parked in the parking lot to this area." (Hodgkins Dep. 28.)

R.J. Grondin, in turn, argues that the location of Mr. Hodgkins's fall was not an area "accessible by equipment," such that Mr. Hodgkins's claim does not arise out of and is not in any way connected to its services performed under the contract. (Def.'s Opp. to Pl.'s Mot. Summ. J. 5.) R.J. Grondin further maintains that the Maine Mall expressly "agreed to release [R.J. Grondin] from any Liability resulting from [the Maine Mall's] failure to request sand and/or salting services in connection with the Agreement" and that Mr. Hodgkins's claim is a direct result of the Maine Mall's failure to request services outside the former Ruby Tuesday building. (Def.'s Opp. to Pl.'s Mot. Summ. J. 5.)

Indemnification provisions should be interpreted according to their plain, unambiguous language. *Devine v. Roche Biomedical Laboratories, Inc.*, 637 A.2d 441, 446 (Me. 1994). Indemnification claims based on contract must rest upon a "clear, express, specific, and explicit contractual provision," under which the indemnitor has agreed to assume the duty to indemnify. *Id.* In this case, the Indemnification Provision makes clear that R.J. Grondin agreed to indemnify the Maine Mall for "any and all claims . . . which arise out of or are in any way connected with . . . the Services performed under this Agreement," "regardless of whether or not such Claims are caused or alleged to have been caused in whole or in part by any negligent act or omission" on the part of the Maine Mall. (Pl.'s Ex. A, at 2-3.)

Nonetheless, the record in this case does not permit, as a matter of law, that R.J. Grondin must indemnify the Maine Mall. As an initial matter, there exists a genuine issue of fact as to whether the location of Mr. Hodgkins's fall was an area "accessible by equipment."[3] (*See* Add. S.M.F. ¶ 8; Supp.'g S.M.F. ¶¶ 11, 13.) Furthermore, to the extent

_____

[3] Paragraph 11 of the Maine Mall's Statement of Material Facts attempted to admit that "[t]he walkway area in front of the former Ruby Tuesday's restaurant where Mr. Hodgkins ultimately fell is an exterior area accessible by equipment where persons may

the walkway area in front of the former Ruby Tuesday building is not an area "accessible by equipment," the factual circumstances appear to trigger the provision that purportedly releases R.J. Grondin from liability as a result of the Maine Mall's failure to request sanding or salting services. (Add. S.M.F. ¶ 2; *see* Ex. A attached to Def.'s Ex. 1.) The parties mutual understanding of this provision as it relates to R.J. Grondin's duty to indemnify is a question of fact for the factfinder.[4] *See Acadia Ins. Co. v. Buck Constr. Co.,* 2000 ME 154, ¶ 8, 756 A.2d 515.

## IV.    Conclusion

For the foregoing reasons, Defendant Third-Party Plaintiff's Motion for Partial Summary Judgment is DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: __2/10/2020__

_____
MaryGay Kennedy, Justice
Maine Superior Court

---

walk."(Supp.'g S.M.F. ¶ 11.) However, R.J. Grondin properly denied this statement, and curiously, the Maine Mall did not deny Paragraph 8 of R.J. Grondin's Additional Statement of Material Facts stating that the walkway area in front of the former Ruby Tuesday building is not an area "accessible by equipment." (Add. S.M.F. ¶ 8.)

[4] "Canons of construction require that a contract be construed to give force and effect to all of its provisions, and we will avoid an interpretation that renders meaningless any particular provision in the contract." *Acadia Ins. Co.,* 2000 ME 154, ¶ 9, 756 A.2d 515 (internal quotations omitted) (citations omitted).