2006 ME 58

**Doris CHAMPAGNE**

v.

**VICTORY HOMES, INC., et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: April 6, 2006.

Decided: May 16, 2006.

Doris Champagne, Scarborough, for plaintiff.

Susan B. Driscoll, Danielle P. West–Chuhta, Bergen & Parkinson, L.L.C., Kennebunk, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, LEVY, and SILVER, JJ.

ALEXANDER, J.

[¶ 1] This appeal involves interpretation of an arbitration clause in a purchase and sale agreement incident to the sale of a home. Lance Roy[1] and Victory Homes, Inc. (hereinafter collectively referred to as Victory) appeal from an amended order entered in the Superior Court (Cumberland County, *Delahanty, J.*), compelling the parties in this case to engage in non-binding arbitration. Victory argues that the court erred in not interpreting the arbitration clause in the purchase and sale agreement to require binding arbitration. We agree and vacate the order.

## I. CASE HISTORY

[¶ 2] In September 2003, Champagne and Victory entered into a purchase and sale agreement by which Champagne agreed to purchase a home in Scarborough. In the printed form agreement, a section addressing mediation of disputes was crossed-out and initialed by both parties. The crossed-out section stated:

> MEDIATION: Any dispute or claim arising out of or relating to this Agreement or the property addressed in this Agreement shall be submitted to mediation in accordance with the Maine Residential Real Estate Mediation Rules of the American Arbitration Association. Buyer and Seller are bound to mediate in good faith and pay their respective mediation fees. If a party does not agree first to go to mediation, then that party will be liable for the other party's legal fees in any subsequent litigation regarding that same matter in which the party who refused to go to mediation loses in that subsequent litigation. This clause shall survive the closing of the transaction.

[¶ 3] To replace the mediation section, section 26 was handwritten into the agreement and initialed by both parties. Section 26 stated:

---

1. Lance Roy is the president of Victory Homes, Inc., and was named individually in Champagne's complaint.

Any dispute or claim arising out of this agreement or the property addressed in this agreement shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association.

[¶ 4] After the closing on the property, disputes occurred regarding problems with the home. Following efforts to resolve the disputes, Champagne filed a complaint, later amended, against Victory Homes, Inc., Lance Roy, Up–Country Home Inspectors, Inc., and her buyer's agent.

[¶ 5] The amended complaint alleged breach of contract, breach of express and implied warranties, unjust enrichment, negligence, several statutory violations, fraud, and entitlement to punitive damages. The defendants moved to dismiss based on the arbitration clause in the agreement. The trial court granted an assented-to motion to stay proceedings while the parties attempted to mediate the case. Thereafter, Up–Country Home Inspectors and Champagne's agent were dismissed from the action.

[¶ 6] In June 2005, the trial court denied Victory's motion to dismiss, and ordered the parties to proceed to arbitration "according to the terms of the contract." Because the parties could not agree on the meaning of the arbitration clause, Victory filed a motion, pursuant to M.R. Civ. P. 59(e), seeking to clarify whether or not the arbitration should be binding. The trial court denied the motion, and ordered that "Defendants Lance Roy and Victory Homes, Inc.'s Motion to Alter or Amend Judgment is DENIED in its entirety and the parties are ordered to engage in nonbinding arbitration within 60 days." Victory moved to reconsider or, in the alternative, to report the case to us for

interlocutory review. The trial court denied Victory's motion. Victory now appeals.

## II. LEGAL ANALYSIS

### A. Standards for Appellate Review

■ [¶ 7] Interlocutory appeals of orders denying requests to stay court proceedings and order a matter to arbitration are authorized by 14 M.R.S. § 5945(1)(A) (2005). *See Patrick v. Moran*, 2001 ME 6, ¶ 4, 764 A.2d 256, 257; *Saga Communications of New England, Inc. v. Voornas*, 2000 ME 156, ¶ 6 n. 4, 756 A.2d 954, 957. Here, the court did order the matter to arbitration, but its direction that the arbitration be nonbinding rendered the arbitration the equivalent of mediation pursuant to M.R. Civ. P. 16B, a preliminary step in an ongoing court proceeding. Thus, the court's action is the equivalent of the denial of a request to send the matter to the binding arbitration that Victory asserts is required by the agreement.[2] Accordingly, consideration of this appeal pursuant to section 5945(1)(A) is appropriate.

■ [¶ 8] General rules of contract interpretation apply to questions of substantive arbitrability. *See V.I.P., Inc. v. First Tree Dev. Ltd. Liab. Co.*, 2001 ME 73, ¶ 3, 770 A.2d 95, 96. We review the trial court's finding of substantive arbitrability for errors of law, and for facts not supported by substantial evidence in the record. *Barrett v. McDonald Invs., Inc.*, 2005 ME 43, ¶ 14, 870 A.2d 146, 149. Whether language in a contract is ambiguous is a question of law that we review de novo. *Lee v. Scotia Prince Cruises, Ltd.*, 2003 ME 78, ¶ 9, 828 A.2d 210, 213. Document language is ambiguous if it is reasonably susceptible to different interpretations. *Acadia Ins. Co. v. Buck Constr.*

2. Because there is no guarantee of finality, a nonbinding arbitration or mediation may be approached by the parties differently than a trial or binding arbitration.

*Co.*, 2000 ME 154, ¶ 9, 756 A.2d 515, 517. If a document is ambiguous and the trial court considers extrinsic evidence, the interpretation of the document is a question of fact for the fact-finder, subject to the rule that ambiguities in a contract are interpreted against the drafter. *Barrett*, 2005 ME 43, ¶¶ 15, 17–18, 870 A.2d at 149, 150–51.

## B. The Arbitration Agreement

▆ [¶ 9] The starting point of analysis in this case is Maine's " 'broad presumption favoring substantive arbitrability.' " *V.I.P., Inc.*, 2001 ME 73, ¶ 4, 770 A.2d at 96; *see also Barrett*, 2005 ME 43, ¶ 15, 870 A.2d at 149;[3] *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. ——, 126 S.Ct. 1204, 1207, 163 L.Ed.2d 1038 (2006); 14 M.R.S. § 5927 (2005). The parties to this appeal do not dispute that the matter should be subject to arbitration.[4] The dispute is over whether or not the arbitration should be binding.

▆▆ [¶ 10] Champagne contends that the arbitration clause is ambiguous because it does not specifically state that arbitration should be binding or nonbinding. She argues that because Roy drafted the arbitration clause, any ambiguity should be construed against him.[5] The fact that parties have different views of what an agreement means does not render it ambiguous. *See Blackie v. Maine*, 75 F.3d 716, 721 (1st Cir.1996) ("[A] contract is not ambiguous merely because a party to it, often with a rearward glance colored by self-interest, disputes an interpretation that is logically compelled."). Several factors weigh in favor of finding no ambiguity in the arbitration clause.

[¶ 11] The arbitration clause states that "[a]ny dispute or claim arising out of this agreement or the property addressed in this agreement shall be decided by arbitration." The "shall be decided by arbitration" term is strongly suggestive of an intent that the final resolution of disputes be by arbitration, not judicial action. *See, e.g., Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, No. 94–CV–108–WDS 1995 U.S. Dist. Lexis 22357, at *8 (S.D.Ill. Sept. 22, 1995) (the words "shall be settled by a disinterested arbitrator" sufficient to indicate intent for binding arbitration).

[¶ 12] The reference to the American Arbitration Association's Construction Industry Arbitration Rules also indicates that the parties intended for the arbitration to be binding. Those Rules indicate that arbitration is a "voluntary submission of a dispute to a disinterested person or persons for final and binding determination." Am. Arbitration Ass'n, *Constr. Indus. Arbitration Rules and Mediation*

---

**3.** In *Barrett* we stated:

> This holding does not affect the presumption favoring arbitrability when such provisions are actually negotiated, or when parties of equal bargaining power are involved. We merely hold that when a party drafts an agreement requiring arbitration, and offers it to individuals on a take-it-or-leave-it basis, the drafter bears the risk if its chosen language is found to be ambiguous.

> *Barrett v. McDonald Invs., Inc.*, 2005 ME 43, ¶ 22, 870 A.2d 146, 152.

**4.** Champagne waived any argument as to whether the doctrine of merger applies to the arbitration agreement.

**5.** We will construe ambiguities in an arbitration agreement against the party who drafted the agreement. *See Barrett*, 2005 ME 43, ¶ 22, 870 A.2d at 151–52. In the present case, however, it is not clear which party drafted the arbitration clause. On the face of the contract the mediation clause was struck and initialed by both Champagne and Roy. The new agreement for arbitration, rather than mediation, was handwritten and initialed by both Champagne and Roy. In addition, the trial court determined that "[a]lthough it appears that each party initialed the change, the record is silent as to who drafted the new paragraph, therefore, any ambiguities cannot be construed against either party."

*Procedures,* (July 21, 2005), *available at* http://www.adr.org/ sp.asp?id=22004. The Rules distinguish between arbitration and mediation, stating that in mediation "[t]he result ... should be an agreement that the parties find acceptable." *Id.* "The mediator cannot impose a settlement, but can only guide the parties toward achieving their own settlement." [6] *Id.* Notably, the parties struck the section of the contract entitled "MEDIATION," which stated that any disputes "shall be submitted to mediation," in favor of an arbitration clause, which states that disputes "shall be decided by arbitration." *See Acadia Ins.,* 2000 ME 154, ¶ 9, 756 A.2d at 517.

[¶ 13] The factors that remove any ambiguity from the agreement also signal the drafters' intent. The language of the agreement ("shall be decided") indicates finality. The reference to the American Arbitration Association's Rules also favors binding arbitration. Finally, "a handwritten provision prevails over a typewritten or printed term." MARGARET N. KNIFFIN, CORBIN ON CONTRACTS § 24.24 (Joseph M. Perillo ed., 1998). "This approach tends to increase the likelihood that the agreement will be valid, and it is most likely to express the intention of the parties." *Id.* The parties' striking the mediation clause in favor of a clause stating that any dispute "shall be decided by arbitration" indicates a choice for binding arbitration. Therefore, we conclude that the handwritten arbitration clause requires binding arbitration.

The entry is:

The order of the Superior Court is vacated. Remanded for proceedings consistent with this opinion.

---

6. Although not dispositive in this case, many jurisdictions hold that reference to the American Arbitration Association Rules creates a presumption of binding arbitration under the Federal Arbitration Act. *See McKee v. Home Buyers Warranty Corp. II,* 45 F.3d 981, 983 (5th Cir.1995); *Rainwater v. Nat'l Home Ins. Co.,* 944 F.2d 190, 193–94 (4th Cir.1991); *Bryson v. Gere,* 268 F.Supp.2d 46, 52 (D.D.C. 2003); *Duke v. Crop Growers Ins., Inc.,* 70 F.Supp.2d 711, 714–15 (S.D.Tex.1999); *see also Doleac v. Real Estate Prof'ls,* 911 So.2d 496, 501–03 (Miss.2005) and cases cited therein. Those courts generally hold that when reference to the AAA is made in an arbitration agreement, "all parties are on notice that resort to AAA arbitration will be deemed both binding and subject to entry of judgment unless the parties expressly agree otherwise." *McKee,* 45 F.3d at 983.