STATE OF MAINE                    DISTRICT COURT
PENOBSCOT, SS.                    BANGOR
                                 Docket No. CV-05-314

                                 JLH-PEN-8|23|06

FILED & ENTERED
SUPERIOR COURT

AUG 24 2006

PENOBSCOT COUNTY

Baird Properties, Inc.,
        Plaintiff


        v.                       Decision and Judgment


Deborah Deane,
        Defendant


        Hearing on the complaint was held on July 26, 2006. The parties (including a
corporate representative of the plaintiff) were present with counsel. In this action, the
plaintiff, Baird Properties, Inc. (BPI), seeks recovery of $6,000 it paid to defendant
Deborah Deane as earnest money as part of a land purchase that was not consummated.
For the reasons set out below, the court concludes that BPI is entitled to a full refund of
its deposit.

        On August 1, 2004, the parties entered in a written purchase and sale agreement
under which Deane was to convey a parcel of unimproved land to BPI for $300,000. *See*
plaintiff's exhibit 6. BPI had purchased a separate parcel of land with a camp and wanted
to buy the property at issue here as the prospective site of a well and septic to benefit the
camp. When the parties executed the purchase and sale agreement, BPI paid Deane
$1,000 as a deposit. The contract provided, "Deposit refundable in event Buyer is unable
to obtain financing through Maine Bank at current market despite good faith effort." The
next line in the contact reads, "Non refundable deposit!" Deane drafted the instrument,
which she based largely on a form she obtained from a retail store. All of the terms in the
parties' contract were derived from the model contract except for the "Non refundable
deposit!" language, which Deane herself added. Deane handwrote the contract when she
and Baird's representatives met in person. The contract provided for a closing date of
August 21, 2004.


                                        1

Within a day or two after the parties executed the purchase and sale agreement, BPI applied for financing through Bangor Savings Bank (BSB), which Deane had recommended. BPI planned to pay $100,000 in cash and then finance the balance of the purchase price. On August 17, BSB issued a commitment letter for a loan of $200,000, which the Bank made contingent on an appraisal of the subject premises that would establish that the property had a fair market value of at least $300,000. The appraisal was not complete by August 21, which was to be the closing date for the conveyance of the land. Steven Baird, who has operations authority for Baird, was concerned about the pace of the appraisal process and had made unsuccessful efforts to expedite it. When it had not been produced by August 21, Baird contacted Deane to see if she would agree to delay the closing date and thereby give the appraiser more time to complete the appraisal. Deane was reticent to do so because she had one or more backup offers for the property, but she ultimately agreed to extend the closing date to September 7, 2004. As consideration for this extension, the parties agreed to increase the deposit by $5,000, or $6,000 total. Deane's attorney drafted an addendum to the contract, which provided that the additional earnest money was "non-refundable." *See* plaintiff's exhibit 8. Deane signed the addendum, but it was not signed by anyone on BPI's behalf. For the reasons set out below, the court finds that BPI did not agree that the second earnest money payment was non-refundable.

In early September, the appraiser issued a report in which he concluded that the fair market value of the subject property was $90,000. On this basis, BSB notified BPI that its loan application was denied. Rather, the Bank was willing to provide a loan of nearly $137,000. This was not agreeable to BPI because it would then be required to increase the amount of its cash payment by more than $60,000, above the $100,000 that it intended to pay. Steven Baird promptly advised Deane of this development. On a daily basis through September 7 (the projected closing date), Baird and Deane then spoke frequently to explore other options that would allow some variation of the transaction to proceed, but they did not come to an agreement. After BSB rejected BPI's loan application in early September, BPI did not look for financing from other lenders.

On September 7, Baird went to Deane's attorney's office, and the attorney gave Baird a check for $6,000 from the firm's trust account. This money represented a refund

2

of the deposits that BPI had paid to Deane. Deane learned about this circumstance. She called Baird's residence in Florida and left a message, saying, among other things, that she did not know what was going on but that "I don't mind giving you back your deposit at all." Nonetheless, at Deane's instruction, her attorney stopped payment on the $6,000 check, and the earnest money has not been returned to it.

The court concludes that the treatment of the $1,000 deposit in August 1 purchase and sale agreement is affected by an ambiguity. On the one hand, the contract recites expressly that the deposit will be refunded to BPI if BPI is unable to obtain financing, despite good faith efforts, from a Maine bank at then-current market terms. On the other hand, the contract provides unconditionally that the deposit is non-refundable. Here, BPI engaged in good faith efforts to obtain financing and, only because of the appraised value of the property, was unable to do so. Although Deane argues that BPI could and should have sought financing elsewhere after BSB denied BPI's loan application, there was not enough time to allow such a process. Deane had already expressed reluctance to grant the extension for closing by less than three weeks, and BPI reasonably concluded that additional efforts to obtain financing within less than one week would be futile. Deane also argues that BPI should have pursued other financing options, such as owner financing. However, the plain terms of the contract obligated BPI to seek financing from a "Maine Bank," which would not include Deane.

This situation triggers the ambiguity. Deane drafted the contract, and the ambiguity therefore must be construed against her. Deane argues that this rule of contract construction does not apply in the present circumstances, because both parties had the opportunity to seek adjustments to the form that Deane obtained. However, even though this was not a "take it or leave it" situation, Deane remains the drafter, and the ambiguities continue to be construed against her. *See, e.g., Champagne v. Victory Homes, Inc.*, 2006 ME 58, ¶ 10, n. 5, 897 A.2d 803, 806 (even where both parties negotiated over the terms of an arbitration agreement, ambiguities would be construed against the drafter). This means that, regardless of whether the $1,000 deposit would be non-refundable in other circumstances, it became refundable here because the conditions for a refund were met.

3

The court also concludes that the parties did not agree that the $5,000 deposit paid later in August would be non-refundable. The court attaches no weight to the word "non-refundable" in the contract addendum. Deane's attorney drafted that document with no input or participation from BPI; rather, at most, it reflected what Deane wanted it to state. Deane testified that Steven Baird himself wanted the $5,000 to be non-refundable. The court finds that this testimony is not credible. The parties agreed to delay the closing date when BPI knew that BSB had not fully agreed to provide it with the financing that was necessary for BIP to buy the land from Deane. It is not reasonable to conclude that, in the face of this uncertainty, BPI would agree to a non-refundable deposit that was even larger than the original deposit, which the parties agreed *was* refundable. Deane's credibility is weakened even further by the incontrovertible evidence that she told Baird, in the telephone message, that she was willing to refund BPI's deposit. Deane attempts to explain this admission in several ways. At trial, she testified that she did not know why she said it. The court concludes that the best explanation is that she realized that the deposit was in fact refundable. She also testified that she was referring only to the $1,000 deposit. However, she has taken the position that this first deposit was not refundable. Thus, this second explanation is not credible.

The court finds that when the parties agreed to increase the earnest money from $1,000 to $6,000, they did not agree to change its character. It therefore remained fully refundable under the circumstances present here.

The entry shall be:

For the foregoing reasons, judgment is entered for the plaintiff in the amount of $6,000, plus pre-judgment interest at the annual rate of 5.77%, post-judgment interest at the annual rate of 10.36%, and its costs of court.

Dated: August 23, 2006

_____
Justice, Maine Superior Court
sitting in Maine District Court
Jeffrey L. Hjelm

4

BAIRD PROPERTIES INC VS DEBORAH DEANE
UTN:AOCSsr  -2005-0057844                    CASE #:BANDC-CV-2005-00314
------------------------------------------------------------------------

BAIRD PROPERTIES INC                                          PL
ATTY STEVENS, CRAIG A.   Tel# (207) 622-7625
ATTY ADDR:21 WESTERN AVENUE AUGUSTA ME 04330

DEBORAH DEANE                                                 DEF
ATTY OTIS, JAY  Tel# (207) 989-6600
ATTY ADDR:PO BOX 907 146 PARKWAY SOUTH SUITE 10 BREWER ME 04412-0907

M=More, Space = Exit:M

Select the EXIT KEY for page selection line.