MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:    2017 ME 206
Docket:      Cum-17-116
Argued:      September 13, 2017
Decided:     October 12, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

MATTHEW EASTWICK

v.

CATE STREET CAPITAL, INC.

ALEXANDER, J.

[¶1] Cate Street Capital, Inc., appeals from a judgment in which the Superior Court (Cumberland County, *Horton, J.*) granted Matthew Eastwick's application to confirm an arbitration award and denied Cate Street's competing motion to vacate that award after concluding that the parties had agreed to arbitrate disputes arising from a settlement agreement. We affirm the judgment.

## I. CASE HISTORY

[¶2] The following facts are taken from the trial court's findings and are supported by substantial evidence in the record. *See Champagne v. Victory Homes, Inc.*, 2006 ME 58, ¶ 8, 897 A.2d 803.

2

[¶3]   Eastwick was employed by Cate Street from August 2010 until February 2016 pursuant to an employment contract.  That contract included a dispute resolution process that required mediation and, if mediation was unsuccessful, arbitration, with no opportunity for resolution through a court system.  The dispute resolution clause in the employment contract stated:

> In the event any dispute arises between the parties to this Agreement, the matter shall be submitted promptly to mediation. In the event that mediation is unsuccessful, the dispute shall be submitted for arbitration in accordance with the rule[s] of the American Arbitration Association.

[¶4]  After Eastwick left Cate Street's employ, a dispute arose under the employment contract.  In accordance with the dispute resolution clause, the parties selected a mediator to address the dispute.

[¶5]  At a mediation session held on July 27, 2016, the parties reached a settlement of the dispute.  To memorialize the settlement, the parties signed a memorandum of understanding (MOU), which provided, in part, for (1) the termination of the employment contract; (2) an exchange of releases in "standard terms" covering all claims between the parties and requiring confidentiality; (3) payment by Cate Street to Eastwick of $100,000 within thirty days after the effective date of the release and $15,000 per quarter for ten quarters beginning on January 15, 2017; (4) a provision authorizing

Eastwick—if Cate Street failed to make a timely quarterly payment and failed to make such payment within thirty days after demand—to "file a stipulated judgment for the outstanding amount due to him"; and (5) a provision in paragraph seven that read: "Any disputes that may arise during the drafting and execution of the settlement shall be submitted to [the same individual who conducted the mediation] for review and resolution." Drafting the MOU was a collaborative effort by all participants in the mediation.

[¶6]   After the mediation, and after signing the MOU, the parties negotiated the terms of the releases and other aspects of the settlement contemplated in the MOU. Because Eastwick and Cate Street did not agree on the final terms, the parties agreed to return to the mediator on October 11, 2016. The day before the meeting, Eastwick sent "proposed exhibits" and a "proposed order" to the mediator and to Cate Street. Eastwick's proposed order contained a provision stating that it was enforceable as an arbitration award.

[¶7]  At the October 11 meeting, the parties discussed the disputes that had arisen since the July 27 mediation. Ultimately, the mediator signed Eastwick's proposed order, which contained findings of fact and conclusions of law and required Cate Street to comply with the "Confidential Settlement

4

Agreement and Mutual Release of Claims," which was referred to as the "final agreement." Cate Street objected to the October 11 meeting "as being anything other than a further mediation session" and filed a written objection to the mediator's decision at or just after the meeting.

[¶8] Eastwick applied to the Superior Court to confirm the October 11 mediation decision as an arbitration award, *see* 14 M.R.S. § 5937 (2016), and filed a motion for approval of attachment and attachment on trustee process, *see* M.R. Civ. P. 4A, 4B. Cate Street opposed Eastwick's motions and filed an application to vacate the arbitration award, *see* 14 M.R.S. § 5938(1)(E) (2016), arguing, despite the terms of its employment contract, that the parties never agreed to arbitration.

[¶9] In January 2017, the court held a hearing on all pending motions, with the primary issue being whether the parties had agreed to arbitrate disputes arising out of the MOU. Eastwick argued that the parties intended to submit any subsequent disputes to the mediator for final resolution—not for additional negotiation or further mediation—as indicated by the language in paragraph seven. Cate Street argued that paragraph seven did not express "a clear contractual intent to go to binding arbitration," but rather that the parties would return to the mediator "in his role as a mediator."

[¶10]  By an order entered on January 9, 2017, the court denied Cate Street's motion to vacate, granted Eastwick's application to confirm the arbitration award, and approved a writ of attachment and attachment upon trustee process in the amount of $250,000.

[¶11]  In its order, the court concluded that the MOU was an integrated, binding settlement agreement even though it contemplated the execution of further documents and that the parties had agreed to arbitrate any disputes arising out of the drafting and execution of the settlement.  Citing to several federal and state court precedents, the court stated that the absence of an express reference to "arbitration" was not determinative and that "the existence of an arbitration agreement does not depend entirely on whether words such as 'arbitrate' or 'arbitration' appear in the agreement."  The court then concluded that the plain meaning of the disputed provision in the MOU was that the mediator "would decide—not mediate—any such dispute between the parties."  The court added, "Mediators facilitate the parties' resolution of disputes, but they themselves do not resolve disputes. Arbitrators do."

[¶12]  The court's order also addressed two provisions in the MOU, the meaning of which Cate Street contested.  First, the court concluded that the

6

plain meaning of the word "outstanding" allowed Eastwick to accelerate all remaining unpaid installments if any one payment was not made by Cate Street within thirty days after demand. Second, the court stated that "[o]ne aspect of the parties' settlement that cannot be preserved intact . . . is the confidentiality provision" due to the public nature of court proceedings.

[¶13] The court entered a judgment in conformity with the order confirming the arbitration award. *See* 14 M.R.S. § 5940 (2016). The judgment awarded Eastwick $100,000 to be paid immediately and an additional $150,000 to be paid, as originally agreed, in ten quarterly installments of $15,000 each, beginning on January 15, 2017; included the acceleration clause; and incorporated the final agreement as a declaratory judgment.[1]

[¶14] Cate Street filed a motion for reconsideration, which the court denied. No motion for further findings of fact and conclusions of law was filed. *See* M.R. Civ. P. 52. Cate Street timely filed a notice of appeal. *See* 14 M.R.S. § 5945 (2016); M.R. App. P. 2 (Tower 2016).[2]

---

[1] The judgment also awarded costs to Eastwick as the prevailing party and included a provision for prejudgment and post-judgment interest.

[2] Rule 2 of the Maine Rules of Appellate Procedure (Tower 2016), governing filing and timing of appeals, was replaced by Rules 2A and 2B of the Maine Rules of Appellate Procedure in the restyling of the Maine Rules of Appellate Procedure adopted to govern appeals filed on or after September 1, 2017.

## II. LEGAL ANALYSIS

### A. Standards of Appellate Review

[¶15]   The Uniform Arbitration Act, 14 M.R.S. §§ 5927-5949 (2016), "requires a reviewing court to vacate an arbitration award if the parties did not agree to submit the dispute to arbitration." *Cape Elizabeth Sch. Bd. v. Cape Elizabeth Teachers Assoc.*, 459 A.2d 166, 168 (Me. 1983); *see* 14 M.R.S. § 5938(1)(E).  "The final decision on the question of substantive arbitrability rests with the court."  *Roosa v. Tillotson*, 1997 ME 121, ¶ 2, 695 A.2d 1196; *accord Westbrook Sch. Comm. v. Westbrook Teachers Assoc.*, 404 A.2d 204, 207 (Me. 1979).  We review the trial court's determination of arbitrability de novo for errors of law.  *Reg'l Sch. Unit No. 5 v. Coastal Educ. Assoc.*, 2015 ME 98, ¶ 16, 121 A.3d 98; *V.I.P., Inc. v. First Tree Dev. Ltd. Liab. Co.*, 2001 ME 73, ¶ 3, 770 A.2d 95.

[¶16]   "Parties cannot be compelled to submit their controversy to arbitration unless they have manifested in writing a contractual intent to be bound to do so."  *Roosa*, 1997 ME 121, ¶ 4, 695 A.2d 1196 (alteration omitted).  "General rules of contract interpretation apply."  *V.I.P.*, 2001 ME 73, ¶ 3, 770 A.2d 95.  "A contract is to be interpreted to effect the parties' intentions as reflected in the written instrument, construed with regard for the subject

matter, motive, and purpose of the agreement, as well as the object to be accomplished." *Id.*

[¶17] "Whether language in a contract is ambiguous is a question of law that we review de novo. Document language is ambiguous if it is reasonably susceptible to different interpretations." *Champagne*, 2006 ME 58, ¶ 8, 897 A.2d 803 (citation omitted). If a document is unambiguous, then its interpretation is also a question of law and "must be determined from the plain meaning of the language used and from the four corners of the instrument without resort to extrinsic evidence." *Portland Valve, Inc. v. Rockwood Sys. Corp.*, 460 A.2d 1383, 1387 (Me. 1983). "The fact that parties have different views of what an agreement means does not render it ambiguous." *Champagne*, 2006 ME 58, ¶ 10, 897 A.2d 803.

B.    The Settlement Agreement

[¶18]   Cate Street contends that the MOU does not contain clear contractual language of the parties' intent to submit disputes to the mediator for binding arbitration. We do not agree.

[¶19]  Paragraph seven of the MOU states that "[a]ny disputes that may arise during the drafting and execution of the settlement shall be *submitted* to [the mediator] for review and *resolution*." (Emphasis added.)  A plain reading

of this provision indicates that the parties agreed to yield authority to the mediator to resolve—not make recommendations on or merely assist the parties themselves to resolve—any disputes. *See New Oxford American Dictionary* 1486 (3d ed. 2010) (defining "resolution" as "the action of solving a problem, dispute, or contentious matter"); *id.* at 1734 (defining "submitting" as "agree[ing] to refer a matter to a third party for decision or adjudication").

[¶20] Looking at the four corners of the MOU bolsters this plain language interpretation. *See V.I.P.*, 2001 ME 73, ¶ 3, 770 A.2d 95; *Portland Valve, Inc.*, 460 A.2d at 1387. The purpose of the document was to memorialize the parties' agreement "to settle their dispute . . . after mediati[on]." The MOU provided for the termination of the employment agreement, which, notably, was drafted by Cate Street and required the parties to proceed to arbitration if mediation was unsuccessful; an exchange of releases in "standard terms" covering all claims between the parties and providing for confidentiality; and consideration of $250,000. Thus, there were no remaining issues that required further mediation. The mediator's services were required only to resolve any disputes that arose in the drafting or execution of the settlement in order to make the settlement final.

[¶21]  The language of paragraph seven and the language used by the parties to express the purpose of the MOU indicate finality.  Given this language, we conclude that the parties intended to submit any disputes arising from the MOU to the mediator for arbitration.  *Cf. Champagne*, 2006 ME 58, ¶ 12, 897 A.2d 803 (quoting the American Arbitration Association Rules which define "arbitration" as the "voluntary submission of a dispute to a disinterested person or persons for final and binding determination").  Because we conclude that the there was an agreement to arbitrate, we turn to Cate Street's argument that the court exceeded the scope of its authority by not limiting its decision to confirming the arbitration award.

C.    The Judgment Entered Pursuant to Section 5940

[¶22]  Cate Street contends that the court erred by construing and applying the acceleration clause and the confidentiality provision when Eastwick did not file a breach of contract claim.[3]

[¶23]  Upon granting an application to confirm an arbitration award, the court is required to enter a judgment in conformity with the award.  14 M.R.S. § 5940.  There are limited circumstances in which a court may modify an arbitration award.  *See id.* §§ 5937, 5939; *Me. State Emps. Assoc. Local 1989,*

---

[3]  Cate Street also argues that the court's actions deprived it of due process.  We are not persuaded by Cate Street's argument and do not address it further.

*SEIU v. State Dep't of Corr.*, 593 A.2d 650, 652 (Me. 1991). The court does not modify an award, however, by construing a term in the award when the term's meaning is unambiguous. *See M.S.E.A. Local 1989*, 593 A.2d at 653.

[¶24] Here, the court explicitly stated that its interpretation of the acceleration clause was based on the clause's unambiguous meaning: "Mr. Eastwick is not entitled to judgment for the entire $250,000, at least as of yet. The acceleration provision . . . applies, on its face, only to late installment payments due under section 1(b), not to the initial payment due under section 1(a). Accordingly, the judgment will be for the $100,000 that is clearly past due, and will provide that the judgment may be amended for the entire unpaid amount *if any installment payment is missed and not made within 30 days of a written demand for payment . . . .*" (Emphasis added.) Thus, there would be an acceleration requiring payment of all remaining unpaid installments, not just the original $100,000 payment and the four quarterly installment payments now past due, only if Cate Street were to fail to make the future quarterly payments as due or within 30 days after a written demand for a missed payment. Otherwise, those quarterly payments not yet due must be paid as specified in the MOU.

[¶25]    Although the court noted in its order that the parties' confidentiality had been compromised by the litigation, the court's judgment incorporated the final agreement, including the ten quarterly payments, without ordering acceleration of those payments not yet due and without modifying any of its terms, including the confidentiality provision.

The entry is:

Judgment affirmed.

---

Melinda J. Caterine, Esq., and David Strock, Esq. (orally), Littler Mendelson, P.C., Portland, for appellant Cate Street Capital, Inc.

Julia G. Pitney, Esq. (orally), Drummond Woodsum, Portland, for appellee Matthew Eastwick

Cumberland County Superior Court docket number CV-2016-398
FOR CLERK REFERENCE ONLY