STATE OF MAINE
PISCATAQUIS, ss.

SUPERIOR COURT
CIVIL DIVISION
DKT. NO. CV-17-1

BRISTOL WEST INS. CO., )
)
Plaintiff, )
)
)
)
)
)
v. )
)
)
)
)
FARM FAMILY CASUALTY INS. CO., )
)
)
Defendant. )

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT**

Received & Filed

MAY 2 2 2018

Piscataquis County
Clerk's Office

Bristol West Insurance Company ("Plaintiff") filed a Complaint for Declaratory Judgment against Farm Family Casualty Insurance Company ("Defendant") seeking a declaration that the insurance policy at issue does not provide coverage for Defendant's separate reach-and-apply claim against Plaintiff. (PISSC-CV-2016-004.) That case was stayed pending the outcome of this case. Plaintiff has now filed a Motion for Summary Judgment on its Complaint for Declaratory Judgment. Defendant opposed the Motion on the basis that the insurance policy at issue is ambiguous and there are genuine disputes of material fact present. The Motion is in order for decision.

**FACTS**

Plaintiff issued a Maine Personal Auto Policy (Policy No. G00 5211134 00), which had an effective policy period of February 24, 2012, through August 24, 2012, to Todd Rand. (Pl.'s Supp.'g S.M.F. ¶ 1.) Deborah Northrup, a friend of Mr. Rand, gave Mr. Rand permission to use her detached garage on or about February 29, 2012, at 104 Parkman Road in Wellington, Maine,

Heidi Eddy, Esq for Plaintiff

Josh Birocco, Esq for Defendant

1

in order to perform repairs to his vehicle. (*Id.* ¶¶ 5-7.) Mr. Rand was not renting the garage from Ms. Northrup. (*Id.* ¶ 7.) While he was using the garage to perform the vehicle repairs, a fire started in the garage and destroyed the garage and its contents. (*Id.* ¶ 8.)

Defendant, who is Ms. Northrup's insurance company, paid her for the loss of her garage and its contents. (*Id.* ¶ 9.) Defendant then filed a reach-and-apply action against Plaintiff pursuant to 24-A M.R.S. § 2904 seeking to recover in the amount of $39,034.59. (*Id.* ¶ 10.) Part A of Plaintiff's policy for Mr. Rand pertains to liability coverage and, under the heading of "EXCLUSIONS THAT APPLY TO PART A – LIABILITY COVERAGE," the second paragraph contains an exclusion "[f]or damage to property owned by, used by, rented to, being transported by, or in the care custody or control of an **insured person**." (*Id.* ¶ 3.) That exclusion is not applicable to "damage to a rented residence or rented private garage." (*Id.* ¶ 4.)

Plaintiff filed the present declaratory judgment action pursuant to 14 M.R.S. §§ 5951-5963 seeking a judicial declaration that it is not required to indemnify and/or reimburse Defendant for any amount Defendant paid to Ms. Northrup based on the exclusion listed in the preceding paragraph. (Pl.'s Compl. 3-4.)

## LEGAL STANDARD

Summary judgment is granted to a moving party where "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Lougee Conservancy v. CityMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation omitted). Courts must "consider only the portions of the record referred to and the material facts set forth in the Rule 56(h) statements" and view those facts in the light most favorable to the non-

2

moving party. *Johnson v. McNeil*, 2002 ME 99, ¶ 8, 800 A.2d 702. A genuine issue exists where the jury would be required to "choose between competing versions of the truth." *MP Assocs. v. Liberty*, 2001 ME 22, ¶ 12, 771 A.2d 1040. However, "[s]ummary judgment is no longer an extreme remedy." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18.

## DISCUSSION

Plaintiff moved for summary judgment arguing that there is no genuine dispute of material fact that the insurance policy in question excludes coverage for the loss and does not provide coverage for Defendant's reach-and-apply claim against Plaintiff. The Court agrees and grants Plaintiff's requested judgment on its Complaint for Declaratory Judgment. While Defendant argues that there are genuine issues of material fact with respect to purported ambiguities within the subject policy, the Court disagrees because it finds the policy to be unambiguous and plainly excludes coverage for this loss.

Determining whether or not contract language is ambiguous is a question of law for the Court. *Apgar v. Commercial Union Ins. Co.*, 683 A.2d 497, 498 (Me. 1996). "Contract language is ambiguous when it is reasonably susceptible of different interpretations." *Portland Valve, Inc. v. Rockwood Sys. Corp.*, 460 A.2d 1383, 1387 (Me. 1983). Just because parties have differing views on what a contract means does not make the contract ambiguous. *Champagne v. Victory Homes, Inc.*, 2006 ME 58, ¶ 10, 897 A.2d 803. "If a document is unambiguous, then its interpretation is also a question of law and must be determined from the plain meaning of the language used and from the four corners of the instrument without resort to extrinsic evidence." *Eastwick v. Cate St. Capital, Inc.*, 2017 ME 206, ¶ 17, 171 A.3d 1152 (internal quotation marks omitted). When the Court interprets a contract of insurance, it must consider the entire document and it must "give force and effect to all of its provisions and not in a way that renders any of its provisions

3

meaningless." *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 12, 814 A.2d 989 (internal quotation marks omitted).

First, the exclusion at issue is not reasonably susceptible to different interpretations. In fact, while Defendant argues that term "rented" within the exclusion at issue is ambiguous, the parties actually agree on the interpretation of the exclusion. Fundamentally, they disagree whether there is a genuine dispute of material fact as to whether the exclusion—and the internal exception to the exclusion—applies in this instance. That exclusion explains that Plaintiff does not provide liability coverage under the policy "[f]or damage to property owned by, used by, rented to, being transported by, or in the care, custody or control of an **insured person**. This exclusion does not apply to damage to a rented residence or rented private garage." (Pl.'s Ex. A-1 to Supp.'g S.M.F., at 6.)

Defendant argues that this provision is reasonably susceptible to different interpretations because the term "rented" is not defined in the policy and can have different meanings. This argument appears to be premised on an assumption that Ms. Northrup's statement in her affidavit that Mr. Rand "was not renting the garage from" her means only that Mr. Rand did not pay monetary consideration for use of the garage. Defendant then proceeds to assert that "rented" could apply to use of property in exchange for services provided. However, Plaintiff did not cabin its proposition as to the meaning of the term "rented" in the policy solely to use of property in exchange for monetary consideration. Instead, both Plaintiff and Defendant agree that "rented" can mean monetary compensation or other forms of consideration. (*See, e.g.,* Def.'s Opp'n to Pl.'s Mot. Summ. J. 2; Pl.'s Rep. to Mot. Summ. J. 2-3.) In any event, "rented" is not reasonably susceptible to different interpretations because it is commonly understood to encompass consideration in general. *See, e.g., rent, Black's Law Dictionary* 1410 (9th ed. 2009).

4

What Defendant really disputes is whether Mr. Rand "rented" the garage from Ms. Northrup, which would then bring into play the exception to the exclusion in the policy. However, it is clear that there is no genuine dispute of material fact that Ms. Northrup was not renting the garage to Mr. Rand because she provided an affidavit stating as much in support of Plaintiff's Statement of Material Facts. (Pl.'s Supp.'g S.M.F. ¶ 7; Pl.'s Ex. B to Supp.'g S.M.F., at ¶ 3.) Defendant has not pointed to any evidence in the record to qualify Ms. Northrup's statement, i.e., that Mr. Rand *did* use the garage in exchange for some type of consideration; instead, Defendant qualifies the statement of material fact by disputing what Ms. Northrup meant when she stated that Mr. Rand "was not renting the garage from" her. *See generally Dyer v. DOT*, 2008 ME 106, ¶ 15, 951 A.2d 821 ("Failure to properly respond to a statement of material facts permits a court to deem admitted any statements not properly denied or controverted."). Without properly controverting this statement by pointing to evidentiary support in the record, this characterization of Ms. Northrup's intent behind her statement is not sufficient to generate a genuine dispute of material fact.

Second, the other provision within the policy starting on page 40 that Defendant offers as purportedly ambiguous is not ambiguous at all. Defendant points to an "INSURING AGREEMENT" starting on page 40 with language that differs from the standard "Insuring Agreement" in Part A of the policy. From there, Defendant notes that the exclusion in question does not appear after the "INSURING AGREEMENT" on page 40, but that both might seemingly apply to "PART A – LIABILITY COVERAGE," which is the part of the policy to which the exclusion in question is applicable. Defendant concludes that a "genuine issue of material fact is raised because an insured is left to question which 'Insuring Agreement' section of the policy would apply." (Def.'s Opp'n to Pl.'s Mot. Summ. J. 3.)

5

This "INSURING AGREEMENT" Defendant points to as allegedly creating an ambiguity appears in a section of the policy titled "NAMED NON-OWNER COVERAGE ENDORSEMENT." (Pl.'s Ex. A-1 to Supp.'g S.M.F., at 40.) Directly below this heading it states that "[i]f **you** pay the premium for Named Non-Owner Coverage, then **you** agree that this policy is amended as follows . . . ." The "NAMED NON-OWNER COVERAGE ENDORSEMENT" then details which general definitions are amended, that the "INSURING AGREEMENT" is amended, and that certain exclusions are deleted or deleted and replaced. (*Id.* at 40-41.) However, viewing the policy as a whole and based on the qualification in the section, it is clear that these amended definitions, the amended "INSURING AGREEMENT," and the removal or revisions of *some* exclusions only apply if the policyholder pays the premium for Named Non-Owner Coverage (hence the "if you pay . . . then you agree" language).

The two policy declaration pages and the policy change request form both indicate that Mr. Rand's coverage was limited to bodily injury, property damage, medical payments, and uninsured/underinsured motorist coverage. (Pl.'s Ex. A-1 to Supp.'g S.M.F.) While that does not prove that Mr. Rand did not pay the premium for Named Non-Owner Coverage, which would bring the "NAMED NON-OWNER COVERAGE ENDORSEMENT" into play, even assuming he did pay the premium for Named Non-Owner Coverage, the exclusion at issue would not be affected. It is clear that the "NAMED NON-OWNER COVERAGE ENDORSEMENT," when applicable, does not delete all of preceding pages of the policy but instead amends or deletes the specified sections of the policy. For example, Sections II(C)-(E) indicate that Exclusion 5 is deleted and replaced with referenced text, Exclusion 11 is deleted and replaced with referenced text, and Exclusion 12 is deleted. (*Id.* at 41-42.) There are no other exclusions referenced, i.e., Exclusion 2 is not affected by the "NAMED NON-OWNER COVERAGE ENDORSEMENT."

Defendant argues that because the exclusion at issue here from "PART A – LIABILITY COVERAGE," Exclusion 2, is not referenced in the "NAMED NON-OWNER COVERAGE ENDORSEMENT," the policy is ambiguous because it is unclear what applies. The Court disagrees. As Plaintiff astutely pointed out, there would be no need to specify which exclusions were being deleted or deleted and replaced if the "NAMED NON-OWNER COVERAGE ENDORSEMENT" deleted all exclusions. That part of the endorsement clearly amends *only* the referenced portions of the general policy. To interpret it otherwise would render an extensive number of provisions in the policy meaningless, which is something the Court must avoid doing. *See Acadia Ins. Co.*, 2003 ME 6, ¶ 12, 814 A.2d 989. Defendant has not generated a genuine dispute of material fact as to whether or not the relevant exclusion, Exclusion 2, applies in this case.

Accordingly, there is no genuine dispute of material fact here that Mr. Rand was using Ms. Northrup's private garage but was not renting it from her. This factual situation fits the exclusion to liability coverage in Plaintiff's policy that excludes coverage "[f]or damage to property owned by, used by, rented to, being transported by, or in the care, custody or control of an **insured person**," and the exception that states the "exclusion does not apply to damage to a rented residence or rented private garage" is not applicable here. (Pl.'s Ex. A-1 to Supp.'g S.M.F., at 6.) Here, Mr. Rand damaged property—a private garage—he was using but was not renting. (Pl.'s Supp.'g S.M.F. ¶¶ 5-8.) Under the policy, Plaintiff has no obligation to provide coverage for this loss or indemnify or reimburse Defendant for its payment to Ms. Northrup.

## CONCLUSION

Because there is no genuine dispute of material fact and the subject policy is unambiguous in its exclusion of coverage for the loss, Plaintiff's Motion for Summary Judgment must be

7

granted.

The entry is:

1. Plaintiff's Motion for Summary Judgment on its Complaint for Declaratory Judgment is **GRANTED**.
2. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: _5/18/18_

The Hon. William R. Anderson
Justice, Maine Superior Court

8