STATE OF MAINE                                    BUSINESS & CONSUMER COURT
CUMBERLAND, ss.                                   Location: Portland
                                                  Docket No. BCD-CIV-2021-00027


ETHAN A. CHURCHILL,                      )
ELISSA TRACEY, et al.,                   )
                                         )
                    Plaintiffs,          )
          v.                             )        ORDER DENYING DEFENDANT'S
                                         )        MOTION TO DISMISS
BANGOR SAVINGS BANK,                     )
                                         )
                    Defendant.           )


On January 29, 2021 Plaintiff Ethan Churchill ("Churchill") filed a Class Action Complaint

against Defendant Bangor Savings Bank ("Bangor Savings") on behalf of himself and all persons

similarly situated. An Amended Complaint was filed on March 1, 2021, adding Plaintiff Elissa

Tracey ("Tracey") on behalf of herself and all persons similarly situated. The Amended Complaint

alleges that Bangor Savings (1) wrongfully charges two or more non-sufficient fund fees ("NSF

Fee") on a single item; and (2) wrongfully charges overdraft fees ("OD Fees") on accounts that

were not actually overdrawn at the time the charge was authorized. (Pl.'s Amend. Compl. ¶ 1.)[1]

On April 12, 2021, Bangor Savings filed a Motion to Dismiss (the "Motion") on the grounds that

Churchill and Tracey (hereinafter referred to collectively as "Plaintiffs") have failed to state a

claim upon which relief can be granted.[2]. On May 3, 2021, Plaintiffs filed their Opposition to the

---

[1] The Amended Complaint was filed with a copy of a Bangor Savings document entitled "Important Information About Your Account." The document purports to contain the terms that control the Class members' accounts (the document and its contents are hereinafter referred to as the "Account Terms"). The Court considers the Account Terms in deciding the Motion because the document was filed with the Amended Complaint, is central to Plaintiffs' claims, Plaintiffs repeatedly reference the Account Terms throughout the Amended Complaint, and all parties refer to the Account Terms in their briefs. *See Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 13 843 A.2d 43. Further, as this is a breach of contract case, the Court requires the Account Terms for its analysis of ambiguous terms. \
[2] Many of Bangor Savings' arguments are premised on the National Automated Clearing House Association (NACHA) Rules. However, as discussed at the oral argument, the Court does not consider the NACHA Rules on this

1

Motion, and on May 17, 2021 Bangor Savings filed its Reply. On June 29, 2021, the Court held oral argument. For the following reasons, the Motion is DENIED.

## STANDARD OF REVIEW

A motion to dismiss "tests the legal sufficiency of the complaint." *Livonia v. Town of Rome*, 1998 ME 39, ¶ 5, 707 A.2d 83, 85. In reviewing a motion to dismiss under Rule 12(b)(6), the failure to state a claim in which relief may be granted, the Court "consider[s] the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id.* The legal sufficiency of a complaint challenged pursuant to M.R. Civ. P. 12(b)(6) is a question of law. *Marshall v. Town of Dexter*, 2015 ME 135, ¶ 2, 125 A.3d 1141.

## FACTS

According to the Amended Complaint, Churchill is a citizen and resident of the City of Bangor, Maine. (Pl.'s Amend. Compl. ¶ 12.) Tracey is a citizen of Randolph, Maine. (Pl.'s Amend. Compl. ¶ 13.) Bangor Savings is a corporation duly organized and existing under the laws of the State of Maine and is one of Maine's largest banks; it maintains its principal place of business in Bangor, Maine. (Pl.'s Amend. Compl. ¶ 14.) parsed

I.     *Multiple NSD Fees on the Same Item*

---

Motion because Bangor Savings did include a copy of the NACHA Rules with its Motion and the NACHA Rules are behind a paywall. Therefore, Bangor Saving's arguments premised on the NACHA Rules are not addressed here.

On June 3, 2020 Plaintiff Churchill attempted to make a $55 payment via an American Clearing House (ACH) transaction to United Financial Casualty Company. (Pl.'s Amend. Compl. ¶ 19.) Bangor Savings rejected the payment request due to insufficient funds and charged Churchill a $32 Return Item Fee. (Pl.'s Amend. Compl. ¶ 20.) Unbeknownst to Churchill and without asking Bangor Savings to retry the transaction, six days later, on June 9, 2020, Bangor Savings again attempted to process the payment request. (Pl.'s Amend. Compl. ¶ 21.) Bangor Savings again rejected the payment for insufficient funds and charged Churchill another $32 Return Item Fee. *Id.* Bangor Savings knew the second attempt stemmed from the same payment authorization as the first, as it was labeled a "RETRY PYMT" on Churchill's statement. *Id.* As a result, Bangor Savings charged Churchill $64 in fees to attempt to process one $55 ACH authorized payment. (Pl.'s Amend. Compl. ¶ 22.)

Churchill understood his one-time ACH authorization for a $55 payment to be a single transaction based upon his understanding of the Account Terms, capable at most of receiving a single NSF Fee (if Bangor Savings returned the "item") or OD Fee (if Bangor Savings paid the payment request). (Pl.'s Amend. Compl. ¶ 23.) The same pattern occurred again on August 4 and 10, 2020 with respect to a different attempted payment from Churchill to United Financial Casualty Company. (Pl.'s Amend. Compl. ¶ 24.)

Attached at the end of the Account Terms is a Fee Schedule. The Fee Schedule contains a section entitled "OVERDRAFT/RETURNED." The section contains several entries, one of which is for "NSF, Returned, Uncollected." A footnote is attached to the entry. The footnote states: "Includes any withdrawal, check, ATM, or ACH." The Fee Schedule indicates that the fee for "NSF, Returned, Uncollected" is "$32.00 per item."

The term "item" is used occasionally in the body of the Account Terms, but it is not defined. The term "item" does not appear in the section of the Account Terms labeled "Electronic Funds Transfers Your Rights and Responsibilities," nor in the subsection that specifically discusses the "Automated Clearinghouse (ACH) or other payments network."

II.     *OD Fees on Transactions That Were Authorized When the Account Was Not Overdrawn*

On June 30, 2020, Plaintiff Tracey was charged an overdraft fee on a debit card transaction that settled June 30, 2020. (Pl.'s Amend. Compl. ¶ 111.) At the time the charge had been authorized on a prior day, the account had contained sufficient funds. (*See* Pl.'s Amend. Compl. ¶ 111.) A debit hold for the transaction amount was placed on the account at the time of transaction was authorized. *Id.*

It can reasonably be inferred from the Amended Complaint that it was Tracey's understanding that her account would only be assessed for sufficient funds at the time the debit card transaction was authorized and that the debit holds placed on her account for each transaction sequestered funds to pay for the corresponding authorized transactions. Since Tracey believed the transaction was subject to a fee assessment at the time of authorization, Tracey did not understand the transaction would be assessed again for fees at the time of settlement or that debit hold funds could be used to cover other transactions.

In reference to ATM and everyday debit card transactions, the Account Terms state:

> "[w]e (Bangor Savings) do not *authorize and pay* overdrafts for the following types of transactions unless you ask us to (see consent form below) []. We pay overdrafts at our discretion, which means we do not guarantee that we will always authorize and pay any type of transaction. If we do not *authorize and pay* an overdraft, your transaction will be declined.

(Account Terms 26.) The Account Terms also include a clause indicating the processing order of transactions. In reference to fees during processing, the processing order says, "payment of items

4

may create multiple overdrafts during a single banking day for which you will be charged our standard NSF fee as noted in our common fee schedule for each overdraft whether paid or returned." (Account Terms 6.) However, notably absent from the Account Terms is the term "settlement" or notice that settlement may not occur for several days after transactions are authorized and debit holds are placed on an account. The Account Terms also fail to mention debit holds, explain how debit holds work, or indicate that debit hold-funds may be used to settle funds for transactions that are settled before the transaction for which the debit hold was initially created is settled.

## ANALYSIS

Plaintiffs do not dispute Bangor Savings' right to either (a) reject a transaction and charge a single NSF fee, or (b) pay a transaction and charge a single OD Fee on a transaction, but Plaintiffs contend that Bangor Savings unlawfully maximizes its already profitable account fees with practices that violate the Account Terms. (Amend. Compl. ¶ 3.) The issue before the Court on this Motion to Dismiss is whether Plaintiffs have alleged facts sufficient to state a claim for breach of contract. That issue in turn depends on whether the Account Terms are clear or ambiguous.

I.    *Language of the Agreement is Ambiguous and Cannot Foreclose Plaintiffs' Claims*

Bangor Savings argues that the Plaintiffs' claims are foreclosed by the express language of the Account Terms, which Bangor Savings argues is unambiguous. (Def.'s Mot. Dismiss 3.) However, the language Bangor Savings believes precludes Plaintiffs from raising their claims is the same language Plaintiffs argue Bangor Savings breached and challenge as ambiguous.

"[T]he interpretation of a contract, including whether or not its terms are ambiguous, is a question of law []." *Scott v. Fall Line Condo. Ass'n*, 2019 ME 50, ¶ 6, 206 A.3d 307; *see also Champagne v. Victory Homes, Inc.*, 2006 ME 58, ¶ 8, 897 A.2d 803. Contracts are construed "in

5

accordance with the intention of the parties, which is to be ascertained from an examination of the whole instrument. All parts and clauses must be considered together that it may be seen if and how one clause is explained, modified, limited or controlled by the others." *Dow v. Billing*, 2020 ME 10, ¶ 14, 224 A.3d 244 (quoting *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989.)

Document language is ambiguous if it is reasonably susceptible to different interpretations *Champagne*, 2006 ME 58, ¶ 8, 897 A.2d 803. The mere fact that the parties have different views of what an agreement means does not automatically render the agreement ambiguous. *Id.* at ¶ 10. Ultimately, if a court must attempt to reverse-engineer the parties' intent from the four corners of the contract, the contract is ambiguous, and its true meaning is a question of law to be resolved by the trier of fact on the basis of evidence presented to it at the time of trial. *See InfoBridge, LLC v. Chimani, Inc.*, 2020 ME 41, ¶ 15, 228 A.3d 721; *Devine v. Roche Biomedical Labs.*, 637 A.2d 441, 445 (Me. 1994); *Dow*, 2020 ME 10, ¶ 14, 224 A.3d 244.

### a. "Item" is Ambiguous.

The term "item" is not defined in the Account Terms. Bangor Savings argues that the term "item" is defined by footnote 1 in the Fee Schedule. Footnote 1 tersely states: "Includes any withdrawal, check, ATM and ACH." Footnote 1, however, is attached to the phrase "NSF, Returned, Uncollected," not to the term "item." Bangor Savings nevertheless argues that Footnote 1 defines "item" to mean any presentation, including representation, is a new "item." Bangor Savings' construction of the term may be plausible, but it is not the only plausible interpretation. Plaintiffs argue that a single authorization for payment is a single order for payment and thus a single "item" regardless of how many times the request for payment is made. That interpretation

is also plausible.[3] According to the Complaint, that is how Churchill understood the Account Terms. Since the term "item" is reasonably susceptible to different interpretations, on the record currently before the Court the language of the Account Terms is ambiguous and cannot be resolved at the Motion to Dismiss stage of the proceeding.

*b. "Authorize and Pay" is Ambiguous.*

Given the absence of clarification on debit holds and settlement in the Account Terms, the phrase "authorize and pay" is ambiguous because the Account Terms are unclear on when debit card transactions are assessed for fees. Bangor Savings argues the transaction is accessed for fees twice. First when Bangor Savings authorizes and agrees to pay it *and* again when Bangor Saving settles the charge and transfers the funds. Bangor Savings argues that due to the delay in settling and the order in which all transactions are processed, by the time the funds are transferred to the merchant to settle a prior authorized transaction, the account may no longer have funds sufficient to cover it because debit holds do not truly sequester funds when a transaction is authorized. When that happens, Bangor Savings covers the cost of the transaction and believes under the Account Terms, it is entitled to charge a fee. This is a reasonable interpretation of the contract as written, but it is not the only one. Plaintiffs argue "authorize and pay" means that the transaction is assessed for fees when Bangor Savings authorizes and agrees to pay the amount of the transaction. Plaintiffs assert this is the correct interpretation because after a transaction is authorized, it can no longer be declined. Since the transaction can no longer be declined, Bangor Savings must pay it and should pay it with the funds allotted to the transaction in the corresponding debit hold. This is also a reasonable understanding of the Account Terms. Since the contractual relationship between

---

[3] Maine's Uniform Commercial Code ("U.C.C.") defines an "item" as" an instrument, promise or order to pay money handled by a bank for collection or payment." M.R.S.A. tit. 11, § 4-104(g). However, this does not clarify the issue at stake here.

7

"authorize and pay" and the assessment of transaction fees is reasonably susceptible to different interpretations, on the record currently before the Court the Account Terms are ambiguous and cannot be resolved at the Motion to Dismiss stage of the proceeding.

II.   *Failure to Dispute the Fees with the Bank*

Bangor Savings' argument that the Plaintiffs' claims should be dismissed because Plaintiffs failed to object to the fees within a timely manner is unpersuasive. Plaintiffs' obligation to timely object to fees is limited to objecting to *alleged errors* on their account statements. Plaintiffs are not arguing that fees were charged in error. Rather, Plaintiffs allege the fees were charged purposely in conformity with Bangor Savings' fee charging practice and that Bangor Savings' fee charging practices violate the Account Terms. Correctly understood, Plaintiffs' claims are not subject to the Account Terms internal error remediation provisions. Therefore, Plaintiffs' failure to use the contract's error remediation clause does not bar their claim that Bangor Savings' practices constitute a breach of contract.

III.   *Good Faith and Fair Dealing*

Count I of Plaintiff's one count complaint is (unhelpfully) entitled "Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing." Bangor Savings objects on the grounds that Maine law does not recognize an implied duty of good faith and fair dealing in the common law of contracts. *Fitzpatrick v. Teleflex, Inc.*, 630 F. Supp. 2d 91, 105 (D. Me. 2009). Plaintiffs counter that they are not pursuing breach of the covenant of good faith as an independent cause of action, but rather as a constituent part of their breach of contract claim. Plaintiffs argue that the Account Terms are governed by Maine's U.C.C. and Maine's U.C.C imposes an obligation of good faith. *Chartier v. Farm Family Life Ins. Co.*, 2015 ME 29, ¶ 7, 113 A.3d 234. When a contract governed by Maine's U.C.C is involved, in contrast to a common law contract, the good

8

faith inquiry may be a part of the overall breach of contract analysis. *Id.* On the record before the Court Bangor Savings' Motion must be denied.

## CONCLUSION

For the foregoing reasons, Bangor Savings' Motion to Dismiss is DENIED.

The Clerk is instructed to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

So Ordered.

Dated: **8-12-2021**

_____
Michael Duddy
Judge, Business and Consumer Court

Entered on the docket: 08/12/2021